Amy L Martz  #16508
MARTZ LAW
1682 West Reunion Ave, 4A
South Jordan, UT 84095
AmyLMartz@Protonmail.com
(801) 231-0286

Tyler Ayres, #9200
AYRES LAW FIRM
136 West 12300 South, 201
Draper UT 84020
Tyler@ayreslawfirm.com
(801) 255-5555 Office
(801) 918-9506 cell

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **NICHOLAS AND BARBARA MOULDER** **for and on behalf of minor child, M.M.,** **v.** **DAVIS SCHOOL DISTRICT & DAVIS SCHOOL DISTRICT BOARD OF EDUCATION and SUPERINTENDENT SYDNEE DICKSON and UTAH STATE BOARD OF EDUCATION** | **COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF and DAMAGES** Case No. 2:25 cv 00293 Judge: |

### INTRODUCTION

1. Nicholas and Barbara for and on behalf of minor child, M.M. ("Parents") ("Student") bring this action against Davis School District ("District"), District Board of Education, collectively known a Defendants ("Defendants") for violations of federal and state law regarding the mishandling of disciplinary proceedings,

1

denial of educational rights, and discrimination against minor child, M.M. ( " S t u d e n t " ) Student with disabilities.

2. Defendants violated S t u d e civil rights under **§1983**, failed to provide Student with a Free Appropriate Public Education (FAPE) under the Individuals with Disabilities Education Act (**IDEA**), discriminated under Section 504 of the Rehabilitation Act of 1973, subjected him to discriminatory disciplinary actions in violation of the Americans with Disabilities Act (**ADA**) and violated his state constitutional rights under the Utah State Constitution (**UTSC**).

3. P l a i n t i f f s    s e e k    d e c l a r a t o r y ,    i n j u n c t i v e   r e

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this complaint pursuant to the Civil Rights Act of 1871 ( **§1983** " )    4 2    U S C    § 1 9 8 3    a n d    § 1 9 8 8 .    ( c a u s e   o f   a c    o f    a n y    s t a t u t e ,    o r d i n a n c e ,    r e g u l a t i o n ,    c u s    t o    b e    s u b j e c t e d ,    a n y    c i t i z e n    o f    t h e    U n i t e d    privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding f o r    r e d r e s s ..." : attorney's fees and costs.

5. This Court has jurisdiction over this complaint pursuant to the Individuals with D i s a b i l i t i e s IDEAt) 20d UnSCt §14000 rproteActiohns fo( Student with disabilities).

6. This Court has jurisdiction over this complaint pursuant to Title V Section 504 of the Rehabilitation Act of 1973 ("504" )    2 9    U S C -disÇrn Pa4on §n7de8roff4deral grants and programs).

7. This Court has jurisdiction over this complaint pursuant to Title II of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12133 (remedies, procedures, and rights of any person alleging discrimination on the basis of disability).

8. This Court has jurisdiction over this complaint pursuant to the Utah State Constitution ("UTSC"):

   a. Article I, Section 1: Inherent and Inalienable Rights (ensures all persons have the inherent and inalienable right to enjoy petition for redress of grievances).

   b. Article I, Section 7: Due Process of Law (ensures that no person shall be deprived of life, liberty, or property without due process of law).

   c. Article X, Section 1: (guarantees a free and equal public education to the children of Utah.)

   d. This court should apply state law to the state constitutional claims, as the guarantees of life, liberty, redress, and due process issues from the Utah State Constitution, independent and in addition to the federal guarantees in the United States Constitution. *State v. Tiedemann*, 2007 UT 49, 183, 162 P.3d 1106; *Batley v. Bayles*, 2002 UT 58, T11 n.2, 52 P.3d 1158.

9. Defendant Utah State Board of Education (USBE) is a recipient of federal financial assistance for the administration of public education programs, including funding provided pursuant to the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act (ADA). As such, USBE has waived any Eleventh Amendment sovereign immunity for claims brought under these statutes. Pursuant to 42 U.S.C. § 2000d-7 (a)(1), "[a] S shall not be immune under the Eleventh Amendment of the Constitution of the United

States from suit in Federal court for a vi

Amendments of 1972 … the Rehabilitation Ac

Federal statute prohibiting discrimination

This express waiver applies to all claims for injunctive, declaratory, and monetary relief

arising under the IDEA, Section 504, and Title II of the ADA asserted against USBE.

10. This court has subject matter jurisdiction over this complaint pursuant to 28 USC §1331

(federal question jurisdiction).

11. This court has supplemental jurisdiction over the state claims in this complaint pursuant

to *United Mine Workers v. Gibbs*, 383 US 715 (1966).

12. This court may grant the relief sought pursuant §1983"u)gh42 pur

USC §1983 and §1988, compensatory damages, (lost wages, medical expenses,

emotional distress) punitive damages, injunctive relief. *Harvard Law Review*, Volume

134, Issue 4, February 2021.

13. This court may grant relief sought pursuant to allegations of violations of 504, 29 U.S.C.

§ 794 (non-discrimination under federal grants and programs). Reasonable attorney fees

(29 USC §794(b). Violating these provisions of the code entitle Plaintiff Student to

compensatory, punitive damages, remedies incorporated into 504 from the Civil Rights

Act of 1964 by 20 USC §794(a).

14. This court may grant the relief sought pursuant to Americans with Disabilities Education

Act (ADA), 42 USC 12132 (remedies, procedures, and rights for (ADA) shall be the

remedies, procedures, and rights under 504). Plaintiff is entitled to general, special,

punitive, intentional and negligent infliction of emotional distress damages, and

reasonable attorney fees for these upon proper proof and conclusion by the finder of fact.

15. "Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684(1946).

16. This court may grant the r e l i e f   s o u g h t   p u r s u a n t   t o "USC" ) the  Ut Article I, Section 1, Article I Section 7, Article X, Section 1.  Plaintiff petitions for redress of grievances and is entitled by Article 1 Section 1 to be heard. The Utah Supreme Court finds the Due Process Clause of the Utah Constitution, Article I, Section 7 is self-executing. *Spackman v. Bd. of Educ.,* 2000 UT 87, 16 P.3d 533, 534.  (A self-executing constitutional clause is one that can be judicially enforced without implementing legislation.  *Id.*)

    a. In the Spackman case, the Utah Supreme Court applied common law to the state c o n s t i t u t i o n   c l a i m s   t o   j u s t i f y   t h e   r i g h damages   for   violation *Id.* at 538. of   their   individ

    b. Additionally, if the Court determines, an appropriate remedy could also be fashioned by the court, even if no specific remedy is mentioned. *Id.*

    c. The Court determined plaintiffs are entitled to monetary damages for a violation of the Utah State Constitution if defendants 1) commits a flagrant violation of p l a i n t i f f ' s   c o n s t i t u t i o n a l   r i g h t s ,   2 )   e and 3) equi t a b l e   r e l i e f   w a s   a n d   i s   i n a d e q u a t e his injuries.  *Id.* at 538-539.

17. This court may grant the relief sought pursuant to Rule 57 of the Federal Rules of Civil Procedure (declaratory judgment).

18. Venue in this judicial district is proper under 28 USC §1391 as Defendant has substantial ties and operates in this judicial district in which a substantial part of the events and/or omissions at issue occurred.

## **PARTIES**

19. Plaintiffs Nicholas and Barbara Moulder and minor child, Student, reside in Clearfield, Utah.  Student is a fourteen (14) year-old young man who wants to be a paleontologist. He likes drawing, playing video games, and alone time. He has a loving family who regularly communicates with the school to support Student and address his emotional regulation issues as they arise.

20. Defendant Davis School District is a local educational agency located in Davis County, Utah, which operates public schools and receives federal funding. It is responsible for providing special education services under the Individuals with Disabilities Education Act (IDEA) and complying with Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA).

21. Defendant Davis School District Board of Education is the governing body of Davis School District and is responsible for adopting policies, making placement decisions, overseeing compliance with federal and state education laws, and ensuring due process rights for students with disabilities.

22. Defendant Utah State Board of Education (USBE) is a state agency responsible under Utah law for the general supervision of public education in the state, including monitoring compliance with the IDEA, Section 504, ADA, and related federal and state statutes. USBE receives federal financial assistance and is charged with oversight of due process hearings, enforcement of special education safeguards, and ensuring the availability of Free Appropriate Public Education (FAPE).

6

23. Defendant Sydnee Dickson, State Superintendent of Public Instruction, is sued in her official capacity as the highest executive officer of the USBE, for purposes of seeking prospective declaratory and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908).

24.

25. Student attended North Davis Junior High (NDJH) in Clearfield, Utah in the Davis School District (DSD) for 7th grade (2021-2022) and part of 8th grade (2022-2023). He attended D e f e n d a n t s '   s c h o o l s   a t   -P a r k s i d e   E l e m e n t

26. Student is a minor child with a disability known to Defendants on or before 09/22/2021.

27. Student qualified under the federal Special Education law Individuals with Disabilities Education Act (IDEA) as a child with a disability on 12/19/2022.

28. Defendant Davis School District is a public school district in Utah, governed by the Davis School District Board of Education and responsible for the education of students, including students with disabilities.

29. Davis School District receives federal funds from numerous federal programs.

30. Davis School District is in Utah and governed by both federal and Utah state law.

31. Utah State Board of Education (USBE) is responsible under state law for monitoring school district compliance with the IDEA, Section 504, and ADA.

32. USBE failed to take corrective action despite being notified of the due process violations and procedural deficiencies following S t u d e n t ' s   p l a c e m e n t   a t   R e n a

33. USBE improperly interfered with the impartial due process hearing decision by refusing to accept the hearing officer's corrected ruling and by subsequently removing the officer from the hearing officer roster.

34. USBE failed to enforce the remedies identified in the Due Process Hearing Decision issued in favor of Student.

35. USBE's actions and omissions contributed t prolonged exclusion of Student from appropriate educational settings, and the failure to ensure due process.

36.

## **FACTUAL ALLEGATIONS**

37. Davis School District "repeatedly failed" Student succeed in school.

38. Success in school includes but is not limited to attending school, mastering subject matter of the class, socializing appropriately with other students, following directions of authority, and managing themselves as they learn appropriate skills for their grade level and age.

39. Davis School District receives and distributes federal funding for the benefit of students and their corresponding education.

40. For all parts relevant, Student is a Davis School District Student and is entitled to the same opportunities and protections available to any other student.

41. May of 2021, Student' 6th grade teacher recommended parents seek a 504 plan, due to Student' ongoing struggles.

42. Student was found eligible for a 504 Plan on September 22nd, 2021, during his 7th grade year after parents requested the plan and his diagnoses.

43. Davis School District, through NDJH, was made aware of Student's documented behavior incidents at school, and private mental health treatment since at least kindergarten in prior schools and school districts.

44. Student is eligible for accommodations under Section 504 of the Rehabilitation Act.

45. Defendant failed to provide accommodations despite the evaluations and recommendations of prior schools and mental health professionals.

46. After repeated requests by his parents, St September 22nd, 2022.

47. On November 8th, 2022, Student had his head down on his desk as instructed. He utilized this strategy frequently to calm himself down during tumultuous classroom time or when he was otherwise overwhelmed.

48. His 504 accommodations allow him to take a break, by putting his head down and covering it. If this is ineffective, he is office.

49. In spite of these accommodations, Ms. Parmer, his English Teacher, scolded him and called Mr. Bradfield, the counselor to remove him from class in front of his peers.

50. As an autistic child, Student is very much aware of his condition, being removed was humiliating to Student and further ostracized him from his peers.

51. It emphasized how different he was from other children despite his circumstances and the approved and mandated accommodations.

52. After being removed from class by the school counselor, Student and counselor discussed the incident.

53. Counselor asked Student how he felt about what transpired.

54. Student expressed frustration, making a general statement about "thinking about hurting people" when was treated unfairly.

55. Counselor probed further, asking who he wanted to hurt.

56. He responded with the following story. "Ye paper that said what do you know about thi "we did the same activity but just a diffe about this' and I got in trouble.

57. Mrs. Parmer gave me a warning to stay afte wrong. I really don't know. He explained that he had about responded to an assignment truthfully but had gotten in trouble anyway.

58. It is important to note Student is being treated by a private therapist and is accustomed to having his frustrating thoughts kept confidential.

59. This allows him to process those thoughts under the care and tutelage of a professional.

60. This opportunity to speak candidly is very effective with Student and he relies upon the confidentiality to process these thoughts and feelings.

61. Student spoke to his school counselor with the same candor.

62. He stated it was hard to control *thoughts* of hurting people when he was treated unfairly by teachers.

63. Mr. Bradfield, school counselor, probed asking Student how he would hurt other people.

64. Student responded, "Knife or gun, I don't

65. He explained clearly, he did not have any access to guns in his home.

66. He made every attempt to clarify, these are only thoughts and he did not intend or plan in any way to act on these thoughts.

67. He also stated he would kill himself to avoid killing or hurting other people.

68. When asked by Mr. Bradfield who he might hurt, Student named the writing teacher with whom he was admittedly and clearly frustrated with, in the moment.

69. Student explained he understands the consequences if he were to do something harmful to other people

70. He repeatedly emphasized he did not intent to hurt anyone and would take steps to avoid doing so.

71. He simply needed an opportunity to speak candidly and express his feelings and thoughts to someone safe who would listen without judgment or reprisal.

72. Student shared his psychiatric history of mental illness and the treatment provided, including active therapy.

73. He expressed frustration with (typical) family issues and bullying at school.

74. Utah Code 76-5-107.1 Threats Against Schools require an actor to make a threat with "real intent ...to commit any offense involvi property damage" and "threatens the use of

75. The counselor, rather than providing therapy and understanding for Student, interrogated him without another adult present, violating Davis School District Policy Investigations 3.1.5 and Utah Admin. Code R277-609.

76. On November 9, 2022, Student was suspended because of his conversation / interrogation with counselor, without a hearing, violating 20 U.S.C. § 1415(k).

77. Plaintiff / parents were excluded from any proceedings, if there were any, and denied opportunity to participate in the decisions for their child.

78. The result of the hearing was to place Student in temporary placement for 13 school days: November 9, 10, 11, 14, 15, 16, 17, 18, 21, 22, 28, 29, 30, of 2022.

79. No Prior Written Notice for the change of placement was provided.

80. Parents were not allowed an opportunity to respond or provide feedback.

81. A Case Management Team Referral was completed by Principal on November 9th, 2022.

82. The form indicates the school completed a "Notice of Case Management."

83. Student received an "Out of School Suspens

84. The document also states, "Your Student ha

85. Despite this obvious documentation of suspension, multiple school district employees testified, at the Due Process hearing, Student was NOT suspended or expelled from school and his placement was never changed.

86. November 21st, 2022, the eleventh day of his suspension, it was expanded to an expulsion, in violation of 34 C.F.R. § 300.530(b)-(e) governing short term removals.

87. Defendants assigned Student "work from hom randomly referred to at different times as "Home Study."

88. Student was in this placement for twenty (20) days: December 1, 2, 3, 6, 7, 8, 9, 10, 13, 14, 15, 16, 19 (IEP), 20, 2022 and January 4, 5, 6, 9, 10, 11, 2023.

89. No prior written notice for the change of placement was provided.

90. On November 30th, 2022, Defendants' ordered Student to five days of potential instruction, two days per week starting on December 1, 2022, for the purpose of conducting a Special Education assessment.

91. On November 30th, 2022, Defendants assigned Student to attend a 2-5 program, two days per week starting on December 21st, 2022, for the purpose of conducting a Special Education assessment.

92. Defendant stopped collecting attendance data for Student on December 22nd, 2022. According to Parents, Student only attended four (4) total days of the 2-5 program.

93. A Manifestation Determination Review (MDR) is required when a student is suspended for 10 days or more as required by 20 U.S.C. § 1415(k)(1)(E).

94. A Manifestation Determination Review (MDR) is a procedural safeguard required under the Individuals with Disabilities Education Act (IDEA), and under Section 504, when a Student with a disability faces disciplinary action resulting in a change of placement, such as a suspension or expulsion exceeding ten days.

95. The MDR process is designed to determine whether the student's behavior was: (1) caused by, or had a direct and substantial direct result of the school's failure to i Education Program (IEP).

96. If either condition is met, the disciplinary action must be reconsidered, and the school must take steps to support the student's c rather than imposing punitive me disa-ures tha bility related challenges.

97. Defendant never provided a MDR despite a specific request by Plaintiff once again violating 20 U.S.C. § 1415(k)(1)(E).

98. On December 19th, 2022, Student was a student with a disability, requiring specialized instruction as directed by an Individualized Education Program (IEP) plan under the category of Other Health Impairment.

99. Student had specific learning disabilities in Math and Written Expression.

100. The school was aware of these areas of concern, as they sent multiple class failure notices over several years and report cards indicated below level progress.

101. Although behavior concerns are well documented, no Functional Behavioral Assessment (FBA) or BIP is created.

13

102.     A FBA is a systematic process used in schools to (1) identify specific challenging behaviors a student is exhibiting. (2) determine the underlying causes or functions of those behaviors (e.g., to gain attention, avoid a task, etc.) and (3) develop strategies or interventions to reduce problematic behaviors and replace them with positive alternatives.

103.      Under the IDEA, an FBA is often required when (1) A student with a disability is subject to disciplinary action (e.g., suspension beyond 10 days) (2) the behavior is determined to be a manifestation of the st plan (BIP) is being created or reviewed.

104.     A BIP is a written plan developed to address specific challenging behaviors that interfere with a student's learning or tha

105.     A BIP objectives are (1) Target behaviors identified through a Functional Behavior Assessment (FBA) (2) development of a Hypothesis of why the behavior occurs (function) (3) prevention strategies (how to reduce triggers) (4) replacement behaviors (teaching new, appropriate behaviors) (5) reinforcement and consequences (how to increase positive behavior and respond to problem behavior) and (6) Monitoring and evaluation for effectiveness

106.     The IEP Team determined Student would receive 77% of his education in the "regular class-curricular and non-academic activities to the same extent as children without disab[sic] and 23% in Special or with Education.

107.     The testing results for his Special Education evaluation found despite an average IQ, Student's academic t scores in the areas of Math Computation, Low Math Composite, and Written Expression.

108.     Student never received any accommodation or assistance for his struggles in these areas, as Defendants conducted no testing, evaluation, or inquiry.

109.     This is a Child Find violation under Individuals with Disabilities Education Act (IDEA).

110.     Behavior Assessments from provided by his parents, indicate clinically significant results in Adaptive Skills, Depression, and Adaptability.

111.     Depression assessment returned a raw score indicating severe depression.

112.     His tests of Executive Functioning skills returned below average scores for emotional regulation, inhibitory control, attention, self-monitoring, organization, planning, working memory, and initiation.

113.     Only after Student's suspension did Defendants appropriately test and identify his significant needs.

114.     The IEP team proposed placement in the regular education setting with itinerant services and/or part-time special education services.

115.     This placement recommendation was made after considering the degree of curricular content modification, degree of behavioral interventions needed, degree of instructional modification needed, and disciplinary actions (including the relevant Safe School referral).

116.     Evaluation Summary Report notes Student did not have a history of physical aggression.

117.     Despite observations and report of verbal aggression, administration, faculty, and staff **with the most contact with him** and **who knew him best**, recommended he return to placement at the Junior High with supports.

118.     At the time of this decision, Student was suspended for 10 days.

119.    On November 11, 2023, the school principal called parents to inform them

Student was being "expelled" from the Juni

Renaissance Academy.

120.    Renaissance Academy is a facility for students who pose a danger to others.

121.    The graduation rate at this school is well below district average.

122.    The average age of students at Renaissance Academy was significantly older with

most students being seniors in high school.

123.     Parents were not allowed any input before or after the decision to change his

placement violating 34 C.F.R. § 300.536.

124.    Again, no Manifestation Determination Review was ever held under Section 504

or Individuals with Disabilities Education Act (IDEA).

125.    On January 13, 2023, Parents requested to meet with the school psychologist to

obtain Student's special education records

126.    The school psychologist provided the records and expressed concern about

Student being sent to Renaissance Academy.

127.    While at the school, Parent was asked to sign a Request for Withdraw form.

128.    As parent did not agree with Student being moved, he declined to sign the form.

129.    The form was completed by school personnel.

130.    On the parent signature line it states,

131.    The form deceptively indicates passing grades for English 8, Math 8, Science 8,

US History, and IS 2-5 Mentor, with the Citizenship doc

subjects.

132.     Upon placement by the district at Renaissance Academy, Plaintiffs researched Renaissance to determine suitability for Student and discovered the following about the Renaissance Academy.

133.     Renaissance Academy is located at 264 South 500 East, Kaysville UT 84037.

134.     Prior to 2022-23 school year, the building housing it was in disrepair requiring a "facelift" including a new roof, paint job, new flooring, and a teen center was added.

135.     Nearly 14% of the school employees were designated "Not Qualified."

136.     Not qualified includes educators without a current license, educators teaching on a Local Education Agency (LEA) specific or a professional or associate educator teaching outside their area.

137.     On publicschoolreview.com, Renaissance Academy was given a half star rating, out of 5 stars.

138.     It is listed as an alternative school for grades K-12 by the National Center for Education Statistics (NCES), Utah Department of Education.

139.     Enrollment was 365 students.

140.     Nationally, Renaissance was ranked 13,311th out of 26,089 participating schools.

141.     In Utah, it is ranked 222nd out of 321 schools.

142.     Of the students enrolled 69% were male with 31% female.

143.     At the time Student was sent to Renaissance there were only eight (8) other 8th grade students.

144.     The following year, Student was to attend the 9th grade with approximately 14 other 9th grade students.

145.     During this same time, he would be attending with 310 students in the 12th grade.

146.     The graduation rate was 40-44%, in the bottom 50% of all schools in the nation.

147.    Overall testing scores were in the bottom 50%.

148.    Math proficiency was between 20 to 50% according to NCES data. Niche.com indicated the math proficiency at 10%.

149.    Reading proficiency was between 10 to 50% according to NCES data. Niche.com indicated the reading proficiency was 10%.

150.    As high school, Renaissance Academy was not ranked by schooldigger.com due to insufficient test score data.

151.    Based upon this information and their knowledge of their son, Plaintiffs were concerned Student would not receive a Free and Appropriate Public Education at Renaissance Academy.

152.    Davis School District refused to provide or consider alternatives to Renaissance Academy.

153.    Parents sought legal representation.

154.    On January 26, 2023, Parent through their Attorney, sent a Release of Confidential Information form requesting Student's records and asking reconsider the change of placement to Renaissance Academy.

155.    The email was sent to the principal, attorney for the district, and special education director.  Attorney for the district acknowledged receipt of the request.

156.    By February 1, 2023, Defendants had not yet responded to the request to meet, so attorney for the family send suggested meeting dates and times.

157.    Attorney for district responded declined to meet indicating there were no meeting times available.

158.    On February 6, 2023, no meeting was scheduled, so attorney for family proposed new dates for a meeting.

159.    The next day, a t t o r n e y   f o r   t h e   d i s t r i c t   r e p l i e d,

r e q u e s t   f o r   a   m e e t i n g   b y   t h e   e n d   o f   t h e   we

160.    On February 10, 2023, the special education director responded by email. " T h a n k

you for reaching out via Ms. Martz to express your concern about the decision of the

DSD District Case Management Team to reassign [Student] to Renaissance Academy due

to his recent safe school violation. Please see the attached letter reiterating that Davis

School District stands ready and willing to provide a Free Appropriate Public Education

(FAPE) to [Student]. In addition, in response to your request for continued conversation

a b o u t   t h e   D C M T   d e c i s i o n   dated February 6, 2023 and two a t t a c h e d   l e t

written by the school principal.

161.    P r i n c i p a l ' s   l e t t e r   s t a t e d,   " Y o u r   r e q u e s

R e n a i s s a n c e   A c a d e m y   i s   r e f u s e d. "

162.    Her letter claimed Student made a    " t e r r o r i s t   t h r e a t "   o n   November 15, 2022.

163.    The letter describes a group of assessments alleging Student's risk to others from

an undated or identified, District Case Management Team Assessment Report, including

the following:

164.    Behavior Assessment System for Children 3rd Edition (BASC-3)-3-PRS:

Clinically Significant for Depression, Adaptability, and Adaptive Skills,

165.    CAS: Very Elevated for Use of Weapons (Student does not have access to

weapons),

166.    BDI-II: Severe Depression,

167.    PETRA: Mild Clinical Range:

168.    Total – very high for depression

169.    Tam: Low Medium.

170.    Summarizing, "There is a direct threat, but with no indication of preparation to carry out the threat. There is no indicati

171.    Defendants insisted on a home visit to establish he did not have access to weapons.

172.    Plaintiff opened their home to Defendants to demonstrate Student has no access to weapons in his home.

173.    Despite the inspection and demonstration, Defendants held to their decision finding Student posed a threat.

174.    By comparison, the Center for Disease Control has a list of Risk Factors for Perpetration.  Student demonstrated only 5 out of 11 risk factors in the Individual Risk Factors category; 1 out of 8 in the Family Risk Factors; 1 out of 6 of the Peer and Social Rik Factors; and 0 out of 6 on the Community Risk Factors.

175.    Upon information and belief, most students attending school at the same time have the same Risk Factors if they were subjected to the same examination.

176.    Defendants predetermined the course of conduct and justified their decisions by manipulating the interpretation of the test results.

177.    A records request for Student educational records did not include protocol score sheets for these "risk assessments."

178.    Student was suspended/expelled from school for 122 days during the 2022-2023 school year.

179.    Plaintiffs submitted a Due Process Complaint and Request for Hearing on May 8, 2023.  Defendants filed its Answer on May 18, 2023.

180.    The Hearing was held July 18, 19, 20, and 21, 2023.

181.     During the Due Process Hearing, witness testimony and exhibits provided the following testimony and information.

182.     Defendants failed to issue a notice of expulsion and denied Student an appeal hearing.

183.     Defendants failed to call a team meeting to determine the setting for an Interim Alternative Educational Setting.

184.     Defendants changed Student's placement due to disciplinary removal in violation of 504 and Individuals with Disabilities Education Act (IDEA).

185.     Defendants failed to hold a Manifestation Determination Review (MDR) under 504 or Individuals with Disabilities Education Act (IDEA).

186.     Defendants violated their Child Find obligations under IDEA when they ignored Student's disability identified in his behavior, and failed to act, and poor academic performance.

187.     Defendants failed to conduct a thorough initial evaluation for Special Education in December of 2022.

188.     Defendants failed to use a variety of assessment tools in Student's evaluation.

189.     Defendants failed to sufficient define Student's present levels of achievement and functional performance.

190.     Defendants failed to sufficiently include academic and functional goals designed to meet Student's needs that result from his disability.

191.     Defendants failed to place Student in the Least Restrictive Environment.

192.     Defendants failed to identify additions and modifications to the special education and related services to enable the Student to participate, as appropriate in the general education curriculum.

193.     Defendants failed to provide parents with the opportunity to examine and review all education records.

194.     Defendants failed to ensure parent involvement in placement decisions.

195.     Defendants failed to provide Prior Written Notice of any change of placement.

196.     Defendants failed to provide a Free and Appropriate Public Education (FAPE) as Student was entitled to 82.5 minutes per day of services, starting on 12/19/2022.  Student missed 109 school days from that point forward, amounting to 8,992.5 minutes of Special Education Services.

197.     Defendants denied appeals by Parents and failed to file a due process hearing to extend Student's suspension after 45 school days.

198.     Defendants knew Student was a child with a disability on the day he committed a code of conduct infraction, but did not provide him with protections required.

199.     Here, Plaintiffs "prevailed" at the Due compensatory education.

200.     Unfortunately, this remedy did not make Student whole, as he was unsuccessful at re-integrating into North Davis Junior High School during 9th Grade.

201.      Worse, almost a year later, Plaintiffs became aware that the Utah State Board of Education interfered with the Due Process Hearing Decision violating the impartial nature of the hearing and brought the vali

202.     While reviewing the updated roster of Due Process Hearing Officers in August of 2024, Petitioners noticed their Due Process Hearing Officer was no longer rostered in the State of Utah.

203.     In Fall of 2024, attorney for Petitioners reached out to the hearing officer to inquire if his removal was voluntary.

204.     He provided his personal cell phone number and an invitation to speak.

205.     His removal was not voluntary.

206.     Upon information and belief, based on his word, he was fired from the Utah roster, was not paid for his services, and the final version of his decision was rejected by the Utah State Board of Education (USBE).

207.     The hearing officer had made a common mistake when sending out his final Decision.  He uploaded a previous version of the Decision.

208.     Upon realizing his mistake, he attempted to rectify the mistake by providing the correct Decision.

209.     However, Utah State Board of Education (USBE) allegedly refused to accept it.

210.     They never notified Plaintiffs or Plain

211.     Plaintiffs requested the final Decision from the hearing officer, but he did not provide it.

212.     The Due Process hearing officer ruled in favor of Student on 08/15/2023.

213.     Student re-enrolled at the Junior High based on the orders of the Due Process Hearing Officer in fall of the 2023-2024 school year.

214.     Unfortunately, the environment was unwelcoming, Student struggled to re-acclimate, and Student's Individualized Ed accommodations were ineffective at allowing him to make progress in light of his unique circumstances.

**STANDARD OF REVIEW**

215.     This complaint is for Causes of Action in violation of constitutional rights, statutorily required provisions, and school district regulations.

216.     Substantively, this claim appeals a Due Process Hearing and the refusal to provide services as required under constitutional provisions, statutory rights, and school district regulations.

217.     When the IDEA administrative record is fixed, as here, the District Court conducts a "modified de novo" review in th whether a preponderance of the evidence indicates that the Due Process Hearing Officer's on decision should be reversed." *L.v. Elizabeth Ef, erson* C 798 F.Supp.2d 1177, 1184 (D. Colo. 2011), the Due Process Hearing Officer only adjudicated the claims under IDEA and determined that he lacked subject matter jurisdiction over the ADA and 504 claims, this standard applies only to the First Cause of Action.

218.     Plaintiffs are aggrieved and file this suit to effectively appeal the due process hearing officer's decision. Federal law r the administrative proceedings, (2) hear additional evidence at their request, and (3) grant Plaintiff's relief the court determines to C.F.R 300.516(c).

219.     All other Causes of Action should be adjudicated by the as the initial trier of fact.


**IDEA APPEAL WINDOW REPOENED BY NEWLY ACQUIRED INFORMATION**

220.     Federal IDEA requires a party to file an appeal to a Due Process Hearing within ninety (90) days. (34 CFR §300.516)

221.     Each state is permitted to make minor adjustments to the federal law, typically to deadlines.

222.    Utah's Special Education Rule IV.Q authorizes a civil action by "any party aggrieved by the findings and decision."

223.    The action may be brought in state or federal court but must be filed within thirty (30) days of the Due Process Hearing Decision. UT SER IV.Q.2.

224.    Here, Plaintiffs "prevailed" at the Due Process Hearing and received compensatory education.

225.    Unfortunately, this remedy did not make Student whole, as he was unsuccessful at re-integrating into North Davis Junior High School during 9th Grade.

226.    Worse, almost a year later, Plaintiffs became aware that the Utah State Board of Education interfered with the Due Process Hearing Decision violating the impartial nature of the hearing and brought the validity of the Decision into question.

227.    While reviewing the updated roster of Due Process Hearing Officers in August of 2024, Petitioners noticed their Due Process Hearing Officer was no longer rostered in the State of Utah.

228.    In Fall of 2024, attorney for Petitioners reached out to the hearing officer to inquire if his removal was voluntary.

229.    He provided his personal cell phone number and an invitation to speak.

230.    His removal was not voluntary.

231.    Upon information and belief, based on his word, he was fired from the Utah roster, was not paid for his services, and the final version of his decision was rejected by the Utah State Board of Education (USBE).

232.    The hearing officer had made a common mistake when sending out his final Decision.  He uploaded a previous version of the Decision.

233.    Upon realizing his mistake, he attempted to rectify the mistake by providing the correct Decision.

234.    However, Utah State Board of Education (USBE) allegedly refused to accept it.

235.    They never notified Plaintiffs or Plaintiff's Attorney of the situation.

236.    Plaintiffs requested the final Decision from the hearing officer, but he did not provide it.

237.    The impact of this decision is that Plaintiffs have not received the thorough analysis of their causes of action under IDEA and may not have received the actual remedy granted by the Due Process Hearing Officer.

238.    For this reason, Plaintiffs believe their right to take civil action based on the Due Process Hearing and Decision under IDEA is renewed.


## <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
**Civil Rights Act of 1871 ("CRA 1983")**
**42 U.S.C. § 1983**
**(All Defendants)**

239.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

240.    Civil Rights Act of 1871 ("CRA 1983") of 42 U.S.C. ("CRA") 1983 creates a cause of action for "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress." (42 U.S.C. § 1983.)

241.     Defendants deprived Plaintiffs of their federal constitutional and statutory rights by failing and refusing to provide Student with the educational and public service accommodations and modifications mandated by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

242.     To establish such a violation, Plaintiffs must prove that Defendants treated Student differently due to his disability, without sufficient justification through the following elements:

    a.  The discrimination must involve a government entity,

    b.  An individual with a disability was treated differently than those without disabilities, as proven through policies or practices that create an unjustified disparity,

    c.  The actions must have a discriminatory effect or be applied in a discriminatory way.

243.     USBE is liable as a state entity that, through its inaction and interference with due process rulings, contributed to the deprivation of Student's constitutional rights including access to FAPE and procedural due process.

244.     DSD and DSDBE are a public school district and therefore a government entity.

245.     Here, Defendants should have identified Student′s disability earlie 09/22/2021 they had officially declared him a person with a disability.

246.     Here, Student′s reactions to his disability mad others, and this discrepancy was not accepted or accommodated for by Defendants. They treated him differently from other students whose expressions of boredom, worry, or failure to understand a lesson manifested in different ways.

247.     Here, Defendants's depression and anxiety discriminatory effect. When Defendants failed to follow their own policies and procedures, their discipline was discriminatory.

248.     Courts typically apply a rational basis review to disability-based classifications, meaning Defendants must show its action is rationally related to a legitimate state interest. However, in cases involving fundamental rights, a higher level of scrutiny applies.

249.     Plaintiff asserted then and asserts now, Defendants removal of Student from his disregard of his accommodations and conditions denied him FAPE.

250.     When a student is denied FAPE courts have repeatedly ruled it is a violation of Constitutional and Statutory provisions under both IDEA and 504.

251.

252.     Here, a Due Process Hearing Officer clearly ruled that Defendants did not have a rational basis for expelling Student from school and requiring him to change his placement to Renaissance Academy.

253.     Despite this clear ruling, Defendants refused to comply with or even receive his ruling and recommendations.

254.     As a direct result of Defendants contempt for the ruling, the hearing officer was terminated as hearing officer and his ruling was ignored.

255.     No additional hearing is provided.

256.     If the Court finds Defendants violated §1983, the court should grant compensatory damages, punitive damages, and injunctive relief.

**SECOND CAUSE OF ACTION**

## Violation of the Individuals with Disabilities Education Act
## (IDEA), 20 U.S.C. § 1400 et seq.
## (All Defendants)

257.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

258.    IDEA, which stands for the Individuals with Disabilities Education Act, is a U.S. federal law that guarantees students with disabilities the right to a free appropriate public education (FAPE) in the least restrictive environment (LRE).

259.    IDEA applies to all public-school districts receiving federal educational funding. Section 504 (20 U.S.C. § 1400 et seq.)

260.    IDEA was reauthorized several times, and it explicitly states that any public school or institution receiving federal funds must comply with its requirements. This is to ensure that students with disabilities are provided with free appropriate public education (FAPE) and that the schools are implementing Individualized Education Programs (IEPs) and providing services in the least restrictive environment (LRE).

261.    Specifically, Section 612(a)(1) of IDEA mandates that states and public schools must ensure that they provide FAPE to all children with disabilities, and in return, they are eligible for federal funding.

262.    DSD and DSDBE receives federal funds and is subject to IDEA.

263.    USBE is responsible for ensuring the enforcement of IDEA procedural safeguards and due process outcomes. USBE's refusal t corrected decision contributed to the ongoing denial of FAPE.

264.    Definition of FAPE: Under 20 U.S.C. § 1401(9) and 34 C.F.R. § 300.17, FAPE means special education and related services provided at public expense, meeting the

state's educational standards, designed to

provided in conformity with an Individualized Education Program (IEP).

265.    Proving a FAPE violation requires demonstration the school failed to develop,

implement, or properly follow an appropriate IEP plan.

266.    In this case, Defendant did not provide academic or behavioral support necessary

to provide Student with an opportunity to receive a FAPE.

267.    To prove a Violation of the Individuals with Disabilities Education Act (IDEA),

20 U.S.C. § 1400 et seq., a plaintiff must establish the following key elements:

268.    The plaintiff must show the Student is eligible for protections under IDEA by

meeting the definition of a child with a disability under 20 U.S.C. § 1401(3) which is

defined as follows:

269.    The Student must be evaluated and diagnosed with at least one of the following

categories of disabilities recognized under IDEA:

  a.  Intellectual disability
  b.  Hearing impairments (including deafness)
  c.  Speech or language impairments
  d.  Visual impairments (including blindness)
  e.  Serious emotional disturbance (referred
  f.  Orthopedic impairments
  g.  Autism
  h.  Traumatic brain injury (TBI)
  i.  Other health impairments (OHI) (such as ADHD, anxiety, or depression).
  j.  Specific learning disabilities (SLD) (such as dyslexia, dyscalculia, dysgraphia).
  k.  Deaf blindness.

270.    The disability must adversely affect th

necessitate special education and related services.

271.    This definition of "child with a disability" under IDEA is crucial for ensuring

children like receive the appropriate education and services they are legally entitled to.

272.     *Endrew F. v. Douglas County School District*, 580 U.S. 386 (2017) found that schools must offer an IEP allowing for meaningful progress, rather than minimal advancement.

273.     Student's disability is classified as "Other Health Impairments" for dealing with and impacted by anxiety and depression.  After the school finally did a thorough assessment, they also identified that he has specific learning disabilities in mathematics and written expression.

274.     Before he qualified under IDEA, he had a 504 plan which was effective. Student was not able to focus and was overwhelmed by academic tasks in the areas of his disabilities. He would put his head down, wear his hoodie, and deal with the increased anxiety by removing the overwhelming stimuli and focused on simple tasks like breathing.

275.     He was doing exactly this when his teacher took issue with his having his head on his desk, hood pulled up over his head and failed to respond when she gave him directions.

276.     Consequently, she called the counselor to remove him.

277.     IDEA includes several procedural safeguards under 20 U.S.C. § 1415. A violation occurs when a school fails to follow or adhere to those safeguards.

278.     The first safeguard requires schools to conduct proper evaluations to assess a child's needs.  To accomplish this, the school must evaluate all students suspected of having a disability (20 U.S.C. § 1414).

279.     In addition, if a child is struggling academically or behaviorally, the district must initiate an evaluation process.

280.     Here, the school did not conduct any evaluation following the incident where the counselor elicited the comments from Student resulting in his expulsion.

281.     Before expelling or suspending a Student for more than 10 days, the school is required to hold a Manifest Determination Review (MDR) to determine if the behavior was related to the child's disability (20

282.     The goal of the MDR is to ensure that students with disabilities are not punished for behavior that may be directly linked t played a role in the behavior, schools must consider alternative behavioral interventions rather than punitive disciplinary measures.

283.     Despite Student's parents' request to conduct an MDR. Defendants

284.     Student was expelled without due process of law which also amounted to violations of the 14th Amendment to the U.S. Constitution and Article 1 § 7 of the Utah Constitution.

285.     Additionally, parents must be included in meetings and decisions regarding their child's special education services (34 C.F

286.     Schools must notify parents of proposed placement.

287.     The district must provide prior written notice to parents whenever it proposes or refuses to change the child's placement or

288.     Here, Parents were not given notice of the meetings and or decisions regarding their child's special education services.

289.     In this matter, Parents were never given an opportunity by the school to be heard and or provide input as to Student's special education and or p

290.     The decision to expel him was made independent of Student or parent involvement.

291.     The district did not conduct a timely Special Education Evaluation, violating 34 C.F.R. § 300.304(c)(4).

292.     IDEA requires that students with disabilities be educated in the Least Restrictive Environment (20 U.S.C. § 1412(a)(5)).

293.      A violation occurs if a school district unnecessarily segregates a child instead of providing supports in the general education setting.

294.     Plaintiff must show how the district's FAPE resulted in educational harm to the student.

295. Examples include of educational harm include:

    a.  Falling behind academically due to lack of appropriate services.

    b.  Emotional or psychological distress due to inappropriate placement.

    c.  Limited access to meaningful education or opportunities.

296.     Here, Student's education had when he was suspended and then expelled.

297.     Without justification, due process, or fairness, Student was ordered to an alternative setting (Renaissance Academy).  Renaissance Academy was not an environment with any likelihood of success for Student.

298.     Student was already struggling with his mental health in the general education setting, made worse by his unidentified academic struggles. The unlawful school discipline over ten (10) months created an insurmountable barrier to a successful education and further damaged his mental health.

299.    Student has not found any educational setting that could remedy the harm done to him.

300.    If the Court finds Defendants violated IDEA, the court should grant compensatory damages and injunctive relief.

**THIRD CAUSE OF ACTION**
**Title V Section 504 of the Rehabilitation Act of 1973**
**29  U.S.C. § 794**
**(All Defendants)**

301.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

302.    Title V Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) protects persons with disabilities and provides remedies, procedures, and rights to any person alleging discrimination on the basis of a disability.

303.    504 creates a cause of action for any qualified individual who is discriminated against based on their disability.

304.    Here, Student is a disabled/handicapped individual.

305.    504 regulates any organization that receives financial assistance from any federal department or agency.

306.    Here, DSD and DSDBE receive federal financial assistance and are therefore responsible for complying with 504.

307.    USBE is a recipient of federal financial assistance and failed in its oversight and monitoring responsibilities to ensure Davis School District complied with Section 504 protections for Student.

308.    504 prohibits qualifying organizations from denying individuals with disabilities an equal opportunity to receive program benefits and services.

309.    504 regulations require a school distri education" (FAPE) to a disabied Student who is in the school d district's jurisdiction, regardless of the

310.    Public schools must provide equal access and accommodations, modifications, and related services to students with disabilities to meet their needs as adequately as the needs of nonhandicapped persons are met under Section 504.

311.    Schools cannot discriminate against those students or deny them necessary supports, akin to how IDEA mandates services through an IEP. 34 C.F.R. §104.44.

312.    The school must provide regular or special education and related aids and services designed to meet the student's individual nondisabled students are met.

313.    An appropriate education for a Student with a disability under Section 504 regulations could consist of education in regular classrooms, education in regular classes with supplementary services, and/or special education and related services.

314.    Since Section 504 has a broader definition of disability than Individuals with Disabilities Education Act (IDEA), Student's depression, anxiety, and history of suicidal ideation qualified as a mental impairment affecting major life activities such as:

    a.    Learning

    b.    Concentrating

    c.    Thinking

    d.    Interacting with others

315.     Defendants discriminated against Student based on his disability by denying necessary accommodations.

316.     Under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), M.M must establish the following elements to prove defendants discriminated against him based on his disability:

    A.  The Student is a qualified person with a disability,

    B.  The District is subject to Section 504,

    C.  The Student was excluded from participation in, denied benefits of, or subjected to discrimination under a program or activity, and

    D. T h e   d i s c r i m i n a t i o n   o c c u r r e d   s o l e   b y   r e a

317.     Here, Student is a qualified person with a disability. He is diagnosed with autism, anxiety, and depression. His 504 Plan eligibility and later IEP determination under Other Health Impairment (OHI) confirm that Student was a person with a disability.

318.     Here, District is subject to Section 504 as a recipient of federal funding.

319.     Here, Student was excluded from participation in the general education setting, with peers who are both disabled and non-disabled, in his neighborhood school, with a balanced mix of both male and female students, where extracurricular programs and activities exist.

320.     Renaissance Academy has three male students for every one female student. It is not a typical school, housing only disabled or delinquent students who pose a threat to the safety of others. The graduation rate is abysmal.

321.     D e f e n d a n t s '   d i  Student occurred based solely on behavior that was a manifestation of his disability. From putting his head down on his desk, to pulling his hoodie over his head, to having the school counselor called to his class to remove

him, to expressing frustration as he would

his disability were the foundations of Defendants discriminated against him.

322.    Student must show he was otherwise qualified to receive an education and participate in school activities.

323.    His struggles stemmed from untreated mental health conditions, which should have been accommodated, rather than punished.

324.    Student must prove he was denied access to school programs because of his disability and that he was disciplined differently than non-disabled students.

325.    Students without disabilities may have responded to boredom by staring into space or doodling on their paper.

326.    Here, Student was not just bored, but severely depressed and anxious.

327.    Students without disabilities were not removed from class for being disengaged

("I don't know").or unresponsive (shrug)

328.    Here, Student was quietly dealing with his depression and anxiety.  The teacher prodded and pestered, then called the counselor to remove him, in front of the entire class.

329.    Staff punished Student for using coping strategies for dealing with his disabilities.

330.    Failure to provide behavioral accommodations for a Student with a mental health condition violated Section 504. *D.L. v. District of Columbia*, 187 F. Supp. 3d 1 (D.D.C. 2016).

331.    Defendants discriminated against Student by failing to provide reasonable accommodations.

332.    Under 34 C.F.R. § 104.33(a), schools must provide a Free Appropriate Public Education (FAPE) to students with disabilities.

333.     Section 504 plans require accommodations, such as allowing Student to use coping mechanisms (e.g., wearing a hoodie over his head) and or providing mental health supports instead of punitive measures.

334.     Students with disabilities cannot be punished more harshly than their non-disabled peers for behaviors caused by their disability (34 C.F.R. § 104.35).

335.     Before expulsion, defendants are required to conduct an MDR under Section 504 regulations (34 C.F.R. § 104.36).

336.     Instead, the school suspended and then expelled Student without evaluating whether his behavior was linked to his mental health.

337.     Defendants refused to grant an MDR after his parents requested one.

338.     Instead, they held a private meeting to discuss their decision to simply expel him.

339.     Defendants attempted to segregate Student at Renaissance Academy, a school with a worse academic environment and academic outcomes, and primarily comprised of children with greater disciplinary issues than ever demonstrated by Student.

340.     Renaissance Academy's low academic performance and disciplinary focus show it was not an appropriate placement.

341.     The Second Circuit ruled placement in an inappropriate setting (alternative school) violated FAPE under Section 504 in *T.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826 (2d Cir. 2014).

342.     Section 504 prohibits segregation unless necessary (34 C.F.R. § 104.34).

343.     Section 504 notice requirements (34 C.F.R. § 104.36) require parents be notified and allowed a reasonable opportunity to participate in the process.

344.    Student′s parents were only verbally inform

Renaissance Academy and were not provided with Procedural Safeguards under either

Section 504 or the IDEA.

345.    Defendants engaged in disparate disciplinary treatment, violating 34 C.F.R. §

104.4.

346.    Student experienced educational and emotional harm as a result of Defendants

intentional discriminatory conduct.

347.    Student missed 122 days of education making a successful re-integration

impossible.

348.    Student experienced emotional distress, isolation, depression and the stigma of

being referred to an alternative school and being banned from his own neighborhood

school.

349.    By shirking their responsibilities and discriminating against M.M, Defendants′

actions have cost his family time and money to fight for their son.

350.    If the court finds a section 504 violation, Student is entitled to compensatory,

punitive damages, and remedies incorporated into 504 from the Civil Rights Act of 1964

by 20 USC §794(a).

351.    Student is entitled to damages as a result of these violations of his rights.

352.    Defendants must be required to pay for (29 U.S.C. §

794a(b)).


**FOURTH CAUSE OF ACTION**
Title II of the Americans with Disabilitie ("ADA")
**42 U.S.C. § 12131-12134**
**(All Defendants)**

353.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

354.     ADA (42 U.S.C. § 12131-12134) creates a cause of action for any qualified individual with a disability.

355.     Title II essentially extends the antidiscrimination prohibition embodied in Section 504 to all actions of state and local governments, and the standards adopted in Title II are generally the same as those required under Section 504.  28 CFR § 35.103(a).

356.     The Americans with Disabilities Education Amendments Act (ADAA) was signed into law in September 2008. Congress passed the ADAA in part to supersede the Supreme Court decisions that had too narro disability.  As members of Congress explain high burden required [by the Supreme Court] and reiterates that Congress intends that the scope of the Americans with Disabilities Act be broad and inclusive.  It is the intent of the legislation to establish a degree of functional limitation required for an impairment to constitute a disability that is consistent Cong. Rec. S8342, S8345 (daily ed. Sept. 11, 2008) (statement of the Managers).

357.     Just like 504, the ADA defines disability as (1) a physical or mental impairment that substantially limits a major life activity, (2) a record of such an impairment, or (3) being regarded as having such an impairment.  29 U.S.C. 705(9)(B), 42 U.S.C. § 12102(1).

358.     USBE, as a public entity, is subject to ADA Title II and contributed to the systemic discrimination by permitting and endorsing exclusionary practices against Student without proper justification.

359.     DSD and DSDBE are public entities subject to ADA Title II and contributed to the systemic discrimination by permitting and endorsing exclusionary practices against Student without proper justification.

360.     Here, Student is a qualified individual with a disability as defined by 42 U.S.C. § 12131(2), because he meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by the PCSD and requires auxiliary aids and services as reasonable modifications to enable him to communicate, read, speak, and learn.

361.     ADA bars educational discrimination and requires educational institutions to make educational opportunities, extracurricular activities, and facilities open and accessible to all students regardless of whether they receive Federal financial assistance.

362.     Under the ADA, a plaintiff must demonstrate:

   A.  that she is a qualified individual within the meaning of the Americans with Disabilities Education Act (ADA),

   B.  that she was excluded from participation in, or was denied benefits of, services, programs, or activities for which the school district is responsible, and

   C.  that such exclusion or discrimination is because of her disability.

363.     ADA defines a qualified individual as someone with a physical or mental impairment that substantially limits one or more major life activities of such individual.

364.     Here, Student is a disabled person whose mental impairment substantially limits

   A.  Learning

   B.  Concentrating

   C.  Thinking

   D.  Interacting with others

365.    He was assessed and qualified as a person with a disability by Defendants under both Section 504 and the IDEA.

366.    Student was excluded from participation in general education in his neighborhood school, with friends he had attended school with for years, at a high school with a typical population of students, offering standard high school activities and programs.

367.    Defendants were responsible to offer this program to all students with and without disabilities without discrimination.

368.    Student was excluded because the expression of his disabilities was inaccurately and unfairly considered to be noncompliance and a threat to others.

369.    If the court finds and Americans with Disabilities Education Act (ADA) violation, the court should grant general, special, punitive, intentional and negligent infliction of emotional distress, and reasonable attorneys' fees relief sought pursuant to 42 USC 12132.

**FIFTH CAUSE OF ACTION**
**Utah State Constitution**
**Article I, Section 1; Article 1, Section 7, Article X, Section 1**
**(All Defendants)**

370.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

371.    The Utah State Constitution Article I, Section 1, Article I, Section 7, and Article X, Section 1 protects the rights of Utah citizens.

372.    U S B E ,   a s   t h e   e n t i t y   c h a r g e d   w i t h   s u p e r v liable for its role in perpetuating violations of Article I and Article X of the Utah Constitution.

373.    DSD and DSDBE as the entities charged with supervising Davis School District public education system, is liable for its role in perpetuating violations of Article I and Article X of the Utah Constitution.

374.    Utah Constitution Article I, Section 1 (Inherent and Inalienable Rights) ensures that all persons have the interest and inalienable right to enjoy and defend their lives and liberties…and petition for redress of grie

375.    Article I, Section 7 (Due Process of Law) ensures that no person shall be deprived of life, liberty, or property without due process of law.

376.    Article X, Section 1 guarantees a free and equal public education to the children of Utah.

377.    This court should apply state law to the state constitutional claims, as the guarantees of life, liberty, redress, and due process issue from the Utah State Constitution, independent from the federal guarantees in the United States Constitution. *State v. Tiedemann*, 2007 UT 49, 183, 162 P.3d 1106.

378.    Although the state and federal constitutions have similar language, they should be analyzed as independent protections. *Batley v. Bayles*, 2002 UT 58, T11 n. 2, 52 P.3d 1158.

379.    The Utah Supreme Court has found that the Free and Equal Public Education Clause of the Utah Constitution (Article X, Section 1) and the Due Process Clause of the Utah Constitution (Article I, Section 7) are self-executing. *Spackman v. Bd of Educ.*, 2000 UT 87, 16 P.3d 533, 534.

380.    A self-executing constitutional clause is one that can be judicially enforced without implementing legislation. *Id.*

381.    In the *Spackman* case, the Utah Supreme Court applied common law to the state constitution claims to justify the r money damages for viola *Id*. at 538. of their indi

382.    Additionally, the Court determined that an appropriate remedy could also be fashioned by the court, even if no specific remedy is mentioned. *Id*.

383.    The court determined plaintiffs are entitled to monetary damages for a violation of the Utah Constitution if defendants:

    a.  committed a flagrant violation of plain

    b.  existing remedies do not redress his injuries, and

    c.  equitable relief was and is inadequate injuries. *Id*. at 538-539.

384.    Here, Defendants violated federal laws, their own policies, and state special education rules in a flagrant violation of Student's rights.

385.    Here, we have no way of knowing that the remedies provided by the Due Process Hearing were those intended for Student by the Due Process Hearing Officer. The remedies provided by the unfinished Decision did not provide Student relief from the discrimination he experienced.

386.    Here, compensatory education was wholly insufficient to remediate the damage done from ten (10) months of education denied, discriminatory treatment, and the emotional and educational damage that remains unrepaired.

387.    If the court finds Defendants violated the Utah State Constitution, the court should grant monetary damages and any appropriate remedy fashioned by the court.


**SIXTH CAUSE OF ACTION**
**Deliberate Indifference to Known Conditions**

**and Regulatory Requirements**
**(All Defendants)**

388.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

389.    At all relevant times, Davis School Dis

financial assistance and subject to the mandates of Section 504 of the Rehabilitation Act

of 1973, 29 U.S.C. § 794, which prohibits discrimination on the basis of disability in any

program or activity receiving federal funding.

390.    DSD and DSDBE knew of the violations through formal complaints, meetings,

discussions, reports and hearing officer rulings, and yet failed to act, demonstrating

deliberate indifference.

391.    USBE had knowledge of the violations through formal complaints and hearing

officer rulings, and yet failed to act, demonstrating deliberate indifference.

392.    Student is an individual with disabilities as defined by Section 504 and the

Individuals with Disabilities Education Ac

been diagnosed with mental health and neurological conditions including autism,

depression, and deficits in executive functioning.

393.    Student's impairments substantially lim

including learning, emotional regulation, and social interaction.

394.    Davis School District was aware of Stud

teacher recommendations, private medical documentation, repeated parental notifications,

and longstanding behavioral and academic difficulties dating back to kindergarten.

395.    Despite this knowledge, Defendants failed to timely evaluate, accommodate, or

appropriately support Student, violating their affirmative obligations under Section 504

and IDEA's "child find" provision, 20 U.S.

396.    Although a 504 Plan was initiated in September 2022, the District and its employees repeatedly and intentionally failed to implement the agreed-upon accommodations, including those expressly designed to de-escalate Student's and support his emotional regulation.

397.    Rather than supporting Student's use of teacher publicly reprimanded and removed him from class, triggering a harmful cascade of events culminating in punitive discipline.

398.    The District school counselor interrogated Student in violation of Utah Admin. Code R277-609 and District Policy 3.1.5, without another adult present, exacerbating his distress and prompting misunderstood statements that were clinical in nature and not actionable threats under Utah Code § 76-5-107.1.

399.    In direct retaliation for shared in a context he's exp believed was therapeutic and confidential—the district suspended and later expelled Student without conducting a MDR or providing prior written notice, in violation of 20 U.S.C. § 1415(k) and 34 C.F.R. § 300.530.

400.    Defendants further failed to conduct a  FBA or implement a BIP despite well-documented behavioral concerns, as required by 34 C.F.R. § 300.530(f).

401.    These failures amount not to mere negligence, but to deliberate indifference—a conscious and reckless disregard for Stude disabilities. Defendants had actual knowle and acted with gross disregard in continuing unlawful disciplinary and placement practices.

402.    The district's decision to—an alternative Studen school with significantly worse academic outcomes, inadequate peer comparability, and

known deficiencies in staffing and services—further evidences the discriminatory impact and intent of the district's conduct.

403.    At no time were parents given meaningful opportunity to participate in placement decisions or provided the procedural protections guaranteed under Section 504 or IDEA.

404.    The harm to Student includes academic regression, psychological trauma, social isolation, denial of access to a Free Appropriate Public Education (FAPE), and loss of over 8,992.5 minutes of educational services to which he was entitled under his IEP.

405.    The facts, as alleged, support a finding Davis School District acted with deliberate indifference in (a) failing to provide accommodations, (b) failing to follow procedural safeguards, (c) implementing punitive discipline without lawful process, and (d) placing Student in a setting grossly inadequate to meet his needs.

406.    Plaintiffs seek declaratory relief, compensatory damages, and any other relief deemed just and proper under Section 504 of the Rehabilitation Act.


### SEVENTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**
**(All Defendants but primarily DSD and DSDBE)**

407.    Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

408.    These claims apply primarily to DSD and DSDBE personnel.

409.    USBE's role in suppressing and disregarding the hearing officer's ruling may support application to the extent it contr

410.    Under Utah law, a claim for intentional infliction of emotional distress requires: (1) outrageous and intolerable conduct; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional distress; and (4) actual

and proximate causation of the emotional distress. *See Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 33, 56 P.3d 524.

411.    Defendants, including school administrators, teachers, and staff, engaged in extreme and outrageous conduct by:

412.    Publicly shaming and removing Student from class in violation of his 504 accommodations;

413.    Interrogating him without another adult present in violation of school policy and state regulations;

414.    Mischaracterizing clinical expressions of frustration as "threats" to justify expulsion and removal;

415.    Depriving Student of educational access for 122 days during the school year;

416.    Placing Student in a punitive alternative school setting known to be academically and socially inappropriate;

417.    Denying procedural safeguards, parental input, and educational services mandated by law;

418.    Predetermining the outcome of his discipline and fabricating or manipulating assessment results to justify their actions.

419.    These actions were taken with reckless disregard for the likelihood of causing emotional trauma to a vulnerable, autistic student with documented emotional regulation impairments, depression, and executive functioning disorders.

420.    As a direct and proximate result of Def severe emotional distress, including trauma, humiliation, social alienation, depression, and loss of self-esteem, which continues to impact his educational and psychological well-being.

421.    Defendants' conduct was so egregious th

tolerated in a civilized society.

422.    Plaintiffs are entitled to compensatory and punitive damages in an amount to be

determined at trial.

### EIGHTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress**
**(All Defendants but primarily DSD and DSDBE)**

423.    Plaintiffs incorporate by reference all preceding paragraphs as though fully stated

herein.

424.    These claims apply primarily to DSD and DSDBE personnel. However, USBE's

role in suppressing and disregarding the hearing officer's ruling may support application

to the extent it contributed to Plaintiff'

425.    Under Utah law, a claim for negligent infliction of emotional distress requires

proof that (1) Defendant owed Plaintiff a duty of care; (2) Defendant breached that duty;

(3) Plaintiff suffered emotional distress; and (4) the emotional distress was proximately

caused by Defendant. *See Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 27, 116

P.3d 323.

426.    Defendants owed Student a clear duty of care as educational professionals

responsible for his safety, psychological welfare, and compliance with federally

mandated disability protections under IDEA and Section 504.

427.    Defendants breached this duty through a pattern of negligence, including:

428.    Failing to timely evaluate or implement educational and behavioral supports;

429.    Failing to follow state and federal disciplinary procedures;

430.    Negligently interpreting expressions of frustration as credible threats without

context or clinical evaluation;

431.    Failing to consult with mental health professionals or parents before excluding Student from school;

432.    Neglecting to provide Student with a Free and Appropriate Public Education;

433.    Failing to respond to parental and legal requests for review or reconsideration.

434.    Defendants' conduct—it was grossly indifferent to extremely neg Student's known vulnerabilities and establ

435.    As a result of these breaches, Student suffered foreseeable and actual emotional harm, including prolonged distress, anxiety, isolation, and educational regression.

436.    Plaintiffs are entitled to compensatory damages for the emotional harm sustained by Student as a direct and proximate resul

437.

### NINTH CAUSE OF ACTION
**Retaliation in Violation of Section 504 of the Rehabilitation Act, Title II of the ADA, and 42 U.S.C. § 1983**
**(All Defendants but primarily DSD and DSDBE)**

438.    Plaintiffs incorporate by reference all prior paragraphs as if fully set forth herein.

439.    These claims apply primarily to DSD and DSDBE personnel. However, USBE's role in suppressing and disregarding the hearing officer's ruling may support application to the extent it contributed to Plaintiff'

440.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the ADA, 42 U.S.C. § 12132, prohibit retaliation against individuals who assert or exercise rights protected under those statutes.

441.    Under 42 U.S.C. § 1983, individuals may be held liable for retaliating against the exercise of constitutionally protected rights.

442.    Plaintiffs engaged in protected activity when they:

A.  Requested and advocated for a 504 Plan and accommodations;

B.  Disclosed mental health diagnoses;

C.  Participated in therapy and counseling;

D.  Challenged the disciplinary process;

E.  Retained legal counsel and requested due process proceedings.

443.      In response, Defendants engaged in **adverse actions** including:

A.  Suspending and expelling Student in disregard of required procedural safeguards;

B.  Changing Student's placement to Renaissanc

C.  Denying parental input in placement decisions;

D.  Refusing to convene IEP and MDR meetings;

E.  Fabricating academic records to obscure the basis of the removal.

444.      Defendants' conduct was motivated, at l

shown by the abrupt removal of Student after asserting his rights, and the subsequent

refusal to engage in collaborative discussions with his family or legal counsel.

445.      These acts would deter a reasonable person from engaging in protected activity

and did in fact chill Plaintiffs' ability

446.      Plaintiffs are entitled to damages and equitable relief.


### TENTH CAUSE OF ACTION
### Fraud and Intentional Misrepresentation
### (All Defendants but primarily DSD and DSDBE)

447.      Plaintiffs incorporate by reference all prior paragraphs.

448.      These claims apply primarily to DSD and DSDBE personnel. However, USBE's

role in suppressing and disregarding the hearing officer's ruling may support application

to the extent it contributed to Plaintiff'

449.    Under Utah law, a claim for fraud requires: (1) a false representation; (2) knowledge of its falsity or reckless indifference; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. *See Armed Forces Ins. Exch. v. Harrison, 2003 UT 14, ¶ 9.*

450.    Defendants knowingly and falsely represented:

   a.  That Student had "passing grades" and "

   b.  That Student was not suspended or expelled;

   c.  That Renaissance Academy was an appropriate educational placement;

   d.  That Student received FAPE during his exclusion from school;

   e.  That Plaintiff voluntarily withdrew Student from school, using fabricated withdrawal forms.

451.    Defendants made these statements intending to induce compliance and to shield themselves from liability.

452.    Plaintiffs justifiably relied on these misrepresentations, including in their attempts to work within the school system, until later discovering their falsity.

453.    Plaintiffs suffered damages including educational loss, emotional distress, legal fees, and interference with educational rights.

## ELEVENTH CAUSE OF ACTION
### Violation of Utah Safe Schools Act and Administrative Code
### Utah Code § 53G-8-202; Utah Admin. Code R277-609
### (All Defendants)

454.     Plaintiffs incorporate by reference all prior paragraphs.

455.     All of the defendants failed to ensure disciplinary practices adhered to Utah state law and administrative code.

456.     The Utah Safe Schools Act, Utah Code § 53G-8-202, and Utah Admin. Code R277-609 establish procedures and protections for student discipline and removals.

457.     These include:

    a.  The right to notice and a hearing before suspension or expulsion;

    b.  Limitations on disciplinary actions without manifest intent to harm;

    c.  Provisions for parental involvement and review;

    d.  Prohibitions against interrogating students without another adult present.

458.     Defendants violated these provisions by:

    a.  Suspending Student for over 120 days without proper notice, hearing, or appeal;

    b.  Interrogating Student without another adult present;

    c.  Mislabeling therapeutic disclosures as intent;

    d.  Denying Plaintiffs involvement in placement decisions;

    e.  Misclassifying "discipline" when in fact it functioned as non exclusion.

459.     These statutory violations directly harmed Student and Parents and demonstrate systemic failure to comply with state law governing student rights.

**TWELFTH CAUSE OF ACTION**
**Violation of the Family Educational Rights and Privacy Act (FERPA)**
**20 U.S.C. § 1232g**
**(All Defendants)**

460.    Plaintiffs incorporate by reference all prior paragraphs.

461.    All of the defendants failed in their oversight duties to ensure the integrity and accessibility of Student records as required under FERPA.

462.    The Family Educational Rights and Privacy Act (FERPA) protects parental rights to inspect and review their child's educat and discipline files. See 20 U.S.C. § 1232g(a)(1)(A).

463.    FERPA also prohibits the release of educational records without parental consent and imposes obligations to maintain transparency in student files.

464.    Defendants violated FERPA by:

    a. Failing to provide full and timely acce

    b. Withholding testing protocols and evaluation score sheets;

    c. Falsifying or misrepresenting information in official records, including fabricated grades and false withdrawal forms;

    d. Omitting key records from disclosure that were used to justify placement decisions.

465.    These violations interfered with Plaint Student's education and disciplinary defen

466.    While FERPA does not create a private right of action for damages, these violations provide evidentiary support for other federal and state claims and may be

54

actionable through Section 1983 for deprivation of a clearly established statutory right.

*See Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).


## RELIEF REQUESTED


445.    Plaintiffs seek the following relief:

446.    **Declaratory Relief** Pursuant to Rule 57 of the Federal Rules of Civil Procedure

and 28 U.S.C. § 2201, Plaintiffs request entry of declaratory judgment that:

a.  Defendants, including Davis School District and the Utah State Board of
    Education (USBE), violated Student's ri
    (42 U.S.C. § 1983).

b.  Defendants, including Davis School Dist
    under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400
    et seq.

c.  Defendants, including Davis School Dist
    under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).

d.  Defendants, including Davis School Dist
    under Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131-
    12134).

e.  Defendants, including Davis School Dist
    under the Utah State Constitution, including Article I, Sections 1 and 7, and
    Article X, Section 1.

f. Defendants, including USBE, demonstrate known disabilities and regulatory protections under federal law, including FAPE obligations.

g. Defendants, including USBE, committed violations of the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g.

h. Defendants, including USBE, violated the Utah Safe Schools Act (Utah Code § 53G-8-202) and Utah Admin. Code R277-609.

i. Defendants, including USBE, committed fraud and intentional misrepresentation regarding Student's disciplinary status

447.    **Compensatory and Monetary Relief**

a.    General damages under the ADA in an amount not less than $1,000,000.00.

b.    Special damages under the ADA in an amount not less than $500,000.00.

c.    Damages for intentional infliction of emotional distress in an amount not less than $5,000,000.00.

d.    Damages for negligent infliction of emotional distress in an amount not less than $5,000,000.00.

e.    Punitive damages under 42 U.S.C. § 1983 and the ADA in an amount not less than $10,000,000.00.

f.    Money damages under the Utah State Constitution in an amount not less than $1,000,000.00.

g.    Compensatory damages under 42 U.S.C. § 1983, Section 504, and the ADA in an amount not less than $500,000.00.

448.    **Equitable and Injunctive Relief**

a.      Injunctive relief requiring Defendants, including Davis School District and USBE, to: a. Expunge all records relate safety assessments, investigations, and non-passing grades related to the incident. b. Cease discriminatory discipline and placement practices against students with disabilities. c. Institute staff training and monitoring to ensure compliance with IDEA, Section 504, and the ADA. d. Investigate and reform administrative policies and procedures that undermine impartial hearing outcomes or interfere with due process under IDEA.

449.    **Attorneys' Fees and Costs**

a.      An award of reasonable attorneys' fees and costs under:

b.      42 U.S.C. § 1988 (for § 1983 claims),

c.      29 U.S.C. § 794a(b) (for Section 504 claims),

d.      42 U.S.C. § 12205 (for ADA claims), and

e.      20 U.S.C. § 1415(i)(3)(B) (for IDEA claims).

450.    **Other Relief**

a.      Such other and further relief as the Court deems just and proper under Bell v. Hood, 327 U.S. 678 (1946), including nominal damages, statutory penalties, and appropriate equitable remedies to v rights.

DATED this 16th[rd] day of April 2025.

_/s/ Amy L. Martz_      _/s/ Tyler Ayres_
Amy L. Martz          Tyler Ayres
          _Attorneys for Plaintiffs_

## **CERTIFICATE OF SERVICE**

Via Efile & Email:

**1. Davis School District**
**Mailing Address:**
Davis School District
45 East State Street
P.O. Box 588
Farmington, UT 84025-0588

**2. Davis School District Board of Education**
**Mailing Address:**
Davis School District Board of Education
Attn: Board Secretary / Superintendent
45 East State Street
P.O. Box 588
Farmington, UT 84025-0588

**3. Utah State Board of Education (USBE)**

**Mailing Address:**
Utah State Board of Education
250 East 500 South
P.O. Box 144200
Salt Lake City, UT 84114-4200


**4. State Superintendent of Public Instruction – Sydnee Dickson**
(Official capacity, service through USBE offices)
**Mailing Address:**
Superintendent Sydnee Dickson
Utah State Board of Education
250 East 500 South
P.O. Box 144200
Salt Lake City, UT 84114-4200

## /s/ *Tyler Ayres*