IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NICHOLAS AND BARBARA MOULDER, for and on behalf of minor child, M.M.,<br><br>Plaintiffs,<br>v.<br><br>DAVIS SCHOOL DISTRICT, DAVIS SCHOOL DISTRICT BOARD OF EDUCATION, SUPERINTENDENT DAN LINFORD, SUPERINTENDENT SYDNEE DICKSON, and the UTAH STATE BOARD OF EDUCATION,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS<br><br>Case No. 1:25-cv-00052-TS-CMR<br><br>District Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter is before the Court on a Partial Motion to Dismiss the First Amended Complaint[1] filed by Davis School District ("DSD"), the Davis School District Board of Education ("DSDBE"), DSD Superintendent Dan Linford ("Linford"), the Utah State Board of Education ("USBE"), and former USBE Superintendent Sydnee Dickson ("Dickson"). For the reasons discussed hereinafter, the Court will grant the Motion.

## I. BACKGROUND[2]

Plaintiffs Nicholas and Barbara Moulder are the parents of Plaintiff M.M. M.M. attended North Davis Junior High ("NDJH") during the 2022 school year. M.M. qualified for a 504 Plan, which permitted him to take certain calming measures when he found himself in overwhelming

[1] Docket No. 60.

[2] The following facts come from Plaintiffs' Amended Complaint (Docket No. 35) (hereinafter referred to as the "Complaint"), and attachments thereto, which the Court takes as true for purposes of Defendants' Motion to Dismiss.

situations. On November 8, 2022, M.M. put his head down on his desk in an effort to calm himself, as permitted by his 504 accommodations. M.M.'s teacher, upset that M.M. was not paying attention, asked the school counselor to take M.M. to his office to discuss M.M.'s behavior. Only M.M. and the school counselor were present in the office.

There, in response to several "probing questions" from the counselor, M.M. revealed he had thoughts of killing others.[3] The day after this conversation, NDJH suspended M.M for violating the District's "Safe and Orderly School Policy"[4] and, sometime shortly thereafter, placed him in a home study course.

On November 30, 2022, M.M. was assigned to a special "2-5 program" for purposes of conducting a special education assessment. On December 19, 2022, following an individualized education plan ("IEP") meeting regarding M.M.'s education, M.M.'s IEP was executed. Following the IEP meeting, NDJH informed Plaintiffs that M.M. was to be placed at the Renaissance Academy, an alternative school setting for the coming semester.[5] Plaintiffs were not allowed an opportunity to provide input regarding M.M.'s alternative placement. For various reasons discussed in the Complaint, Plaintiffs were concerned M.M.'s placement would not provide M.M. with a Free and Appropriate Education ("FAPE"). Plaintiffs communicated their concerns with the placement to DSD, but DSD did not change M.M.'s placement.

Plaintiffs requested a due process hearing under the Individuals with Disabilities Education Act ("IDEA") on May 8, 2023, asserting various claims, violations of the Americans

---

[3] Docket No. 35 ¶ 44.

[4] *Id*. ¶¶ 45–46.

[5] The Complaint states this occurred on November 11, 2023. However, in reading the surrounding allegations, this date appears to be incorrect. The USBE Decision attached to the Complaint states that Plaintiffs were notified sometime in January 2023. Docket No. 35-2, at 10.

with Disabilities Act ("ADA"), Utah law, and the United States Constitution. The matter was subsequently assigned to a Due Process Hearing Officer ("the Hearing Officer"). A hearing was held over four days, from July 18 to July 21, 2023. The Hearing Officer determined his jurisdiction on the matter was limited to review of Plaintiffs' IDEA claim. The Complaint states that Plaintiffs "prevailed" at the due process hearing and received some compensatory education.[6] Notably, M.M. re-enrolled at NDJH for the 2023-2024 school year. However, "the remedy did not make [M.M.] whole, as he was unsuccessful at re-integrating" into NDJH.[7]

After noticing that the Hearing Officer was no longer on the State's roster of approved hearing officers, Plaintiffs' counsel had a conversation with the Hearing Officer, during which he disclosed that he mistakenly issued a preliminary draft of his decision. The Hearing Officer claimed that he had offered a corrected version to USBE, but it was declined. Plaintiffs' counsel asked the Hearing Officer to provide a copy of this alleged final version, but he did not provide it.

Plaintiffs' First Amended Complaint asserts 11 claims for: violation of certain federal and constitutional rights under 42 U.S.C. § 1983 (Claim 1); violation of the IDEA (Claim 2); violation of Title V, Section 504 of the Rehabilitation Act[8] ("§ 504") (Claim 3); violation of the ADA (Claim 4); violation of the Utah Constitution (Claim 5); deliberate indifference (Claim 6); intentional infliction of emotional distress ("IIED") under Utah law (Claim 7); negligent infliction of emotional distress ("NIED") under Utah law (Claim 8); retaliation under the ADA and § 504 (Claim 9); fraud and intentional misrepresentation under Utah law (Claim 10); and

---

[6] Docket No. 35 ¶ 211.

[7] *Id.* ¶ 212.

[8] 29 U.S.C. § 794.

violation of the Utah Safe Schools Act and related regulations (Claim 11).[9] All claims are brought against at all Defendants, except for the ninth, which is directed at DSD and DSDBE only.

Defendants move to dismiss all of Plaintiffs' claims with the exception of Claims 3 and 4 as to DSD, DSDBE, and USBE; and the retaliation portions of Claim 9 as to DSD and DSDBE.

## II. LEGAL STANDARD

When evaluating a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[10] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[11] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[12] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[13] Accordingly, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."[14]

---

[9] Utah Code § 53G-8-202.

[10] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[11] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

[14] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[15] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[16] The court may also consider other documents "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[17]

III. DISCUSSION

*a. Claims against USBE*

"The Eleventh Amendment bars [suits against a state] unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity."[18] This immunity also extends to "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes."[19] It is well-established that USBE is an "arm of the state," and thus is immune to the same extent.[20]

Claims 1 and 9 are brought in whole or in part under § 1983. Plaintiffs also allege various state-law claims against USBE, including violations of the Utah State Constitution (Claim 5); IIED and NIED (Claims 7 and 8); fraudulent misrepresentation (Claim 10); and violation of Utah

---

[15] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[16] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[17] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[18] *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989) (citation omitted).

[19] *Id.* at 70.

[20] *L.C. v. Utah State Bd. of Educ.*, 188 F. Supp. 2d 1330, 1340 (D. Utah 2002) (finding that USBE is an "undisputed state agenc[y] . . . immune from" § 1983 claims and that Utah has not waived immunity through the Utah Governmental Immunity Act). Similarly, as an arm of the state, USBE is not a "person" within the meaning of § 1983. *Will*, 491 U.S. at 71.

Code § 53-G-8-202 (Claim 11). Defendants argue that USBE retains Eleventh Amendment Immunity prohibiting suit on any of these claims.

Congress did not abrogate Eleventh Amendment immunity in passing § 1983,[21] and Plaintiffs have neither argued nor cited to any statute suggesting waiver as to their § 1983 claims. Plaintiffs do, however, argue that under the *Ex parte Young* doctrine, the claims against USBE remain viable. While that doctrine permits injunctive relief against state officials in their official capacity for ongoing federal violations, it does not permit such relief against USBE, as a state agency.[22] Accordingly, the Court will dismiss Claims 1 and 9 insofar as they assert § 1983 liability against USBE.

Regarding the state law claims, states and their agencies retain sovereign immunity over state-law claims brought in federal court, regardless of the relief sought, unless the state has consented to such a suit.[23] Plaintiffs again fail to cite to any waiver of immunity that would allow suit for any of their state-law claims. To the extent Plaintiffs seek injunctive relief on these state-law claims, *Ex parte Young* does not permit such relief to be sought on the basis of state law.[24] Accordingly, the Court will dismiss Claims 5, 7, 8, 9, and 11 against USBE because USBE is immune from suit under the Eleventh Amendment.

*b. Claims against Defendant Dickson*

---

[21] *Will*, 491 U.S. at 66.

[22] *Smith v. Kansas*, 574 F. Supp. 2d 1217, 1219 (D. Kan. 2008) ("*Ex parte Young* does not permit suits against the State itself."); *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) ("[T]he Eleventh Amendment generally will not operate to bar [*Ex parte Young* relief] so long as they . . . are aimed against state officers acting in their official capacities, rather than against the State itself.").

[23] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Smith v. Plati*, 56 F. Supp. 2d 1195, 1200–01 (D. Colo. 1999).

[24] *Pennhurst*, 465 U.S. at 106 ("We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.").

Plaintiff brings suit against Dickson in her official capacity as the former Superintendent of Public Instruction for USBE.[25] The Complaint states that it brings the claims against Dickson for purposes of seeking "prospective declarative and injunctive relief under *Ex parte Young*."[26]

Eleventh Amendment immunity "applies not just to suits brought against states themselves but also to suits against a state official in his or her official capacity."[27] *Ex parte Young* provides an exception to this immunity where a plaintiff seeks (1) "prospective relief for an ongoing violation of federal law" (2) against a state officer sued in their official capacity who has "some connection with the enforcement of the challenged statute."[28] Because *Ex parte Young* applies only to federal claims, Dickson has Eleventh Amendment immunity against Plaintiffs' state law claims. Regarding a violation of federal law and related enforcement, the Complaint alleges that Dickson is responsible for ensuring compliance with the IDEA as Superintendent of Public Instruction.[29]

Defendants argue that Plaintiffs lack standing to seek relief under *Ex parte Young* because the "prospective relief" sought "address[es] hypothetical future harm to a class of students—not a concrete, imminent threat to M.M., specifically traceable to Defendant Dickson."[30]

---

[25] Pursuant to Fed. R. Civ. P. 25(d), Dr. Molly Hart is automatically substituted as the proper party.

[26] Docket No. 35 ¶ 23; *see* 209 U.S. 123 (1908).

[27] *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (internal quotation marks and citations omitted).

[28] *Id*. (internal quotation marks and citation omitted).

[29] Docket No. 35 ¶ 258.

[30] Docket No. 60, at 20.

"Standing is an essential and unchanging part of the case-or-controversy requirement of Article III of the Constitution."[31] "The issue of standing is jurisdictional in nature and is reviewed as a question of subject-matter jurisdiction under Rule 12(b)(1)."[32]

> To establish Article III standing, a plaintiff must show that: (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested.[33]

"The 'injury in fact' requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief."[34] To have standing "[t]o seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future."[35] "The threatened injury must be 'certainly impending' and not merely speculative."[36]

The Court finds that Plaintiffs fail to plausibly state a continuing injury or a real and immediate threat of future harm that is fairly traceable to a violation of the IDEA, or other federal law. Notwithstanding USBE's or Dickson's alleged refusal to accept the Hearing Officer's final decision, Plaintiffs state that they "prevailed" at the due process hearing, and that

---

[31] *K. A. v. Barnes*, 134 F.4th 1067, 1075 (10th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

[32] *OCD Telluride LLC v. Blaney McMurtry LLP*, No. 13-CV-02584-KMT, 2016 WL 153120, at *3 (D. Colo. Jan. 13, 2016) (citing *Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004)).

[33] *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citations omitted).

[34] *Id*; *see K.A.*, 134 F.4th at 1076 (concluding that the plaintiff "has no standing to seek prospective relief" because "[she] has not alleged that she is likely to be harmed by future allegedly discriminatory practices").

[35] *Tandy*, 380 F.3d at 1283 (citing *City of L.A. v. Lyons*, 461 U.S. 95, 101–02, 107 n.8 (1983)).

[36] *Id*. at 1283.

the Hearing Officer "ruled in favor of [M.M.]."[37] Plaintiffs further state that M.M. received some compensatory education and was re-enrolled at NDJH.

At the same time, however, Plaintiffs also allege that: "USBE [has] failed to enforce the remedies identified in the Hearing Officer's decision issued in favor of [M.M.]"; "the remedies provided by the unfinished decision did not provide [M.M.] with relief from the discrimination he experienced"; and "USBE's actions and omissions contributed the continued denial of [a] FAPE."[38] These allegations are conclusory. Plaintiffs provide no factual support or other argument explaining how USBE, Dickson, or any other Defendant has failed to enforce the remedies contained in the Hearing Officer's decision, in what way M.M. continues to experience discrimination, or in what way M.M. is being denied a FAPE.

Regarding the alleged unreleased version of the Hearing Officer's decision, Plaintiffs allege that "[they] may not have received the actual remedy granted by the Due Process Hearing."[39] Plaintiffs do not allege that the final version does contain greater relief, just that it "may." That an unreleased version of the Hearing Officer's decision might exist, which may or may not contain greater relief is speculative, and does not plausibly allege an ongoing violation of federal law, nor an injury that is certainly impending. Therefore, Plaintiffs do not plausibly allege an ongoing or anticipated injury and thus lack standing to seek prospective under *Ex parte Young*.[40]

---

[37] Docket No. 35 ¶¶ 211, 224, 236.

[38] *Id.* ¶¶ 34, 35, 448.

[39] *Id.* ¶ 249.

[40] Plaintiffs also allege ongoing harm in the form of uncorrected academic records that reflect the improper suspension, expulsion, and non-passing grades related to the incident. While such harm is plausibly on-going, and one that would likely be redressed by Plaintiff's request for an order requiring expungement, that injury is not one that appears to be fairly traceable to

Because Plaintiffs lack standing, Dickson is immune from suit under the Eleventh Amendment as a state official. Again, Plaintiffs have not cited any affirmative waiver by the state as to any of their causes of action. Additionally, Plaintiffs otherwise fail to adequately plead any cause of action against Dickson by engaging in "group pleading," as discussed below. Accordingly, the Court will dismiss all claims against Dickson.

*c. Claims against Linford*

Plaintiffs bring all claims against Linford in his official capacity as Superintendent of DSD. In Plaintiffs' Response to Defendants' Motion to Dismiss, they state that Linford is named only "to effectuate the prospective, injunctive relief sought by Plaintiffs."[41] Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement showing that the pleader is entitled to relief."[42] Other than being named in the caption, Linford's name does not appear in the Complaint, even under the "Parties" section therein. Thus, Plaintiffs fail to allege a plausible claim against Linford.

Plaintiffs' consistent use of the collective term "Defendants" without differentiation between the individual defendants reflects this issue. The Tenth Circuit discourages the practice of group pleading, whereby a plaintiff collectively refers to all defendants without "mak[ing]

---

USBE, or Dickson as superintendent of USBE, or that such harm is resulting from violations of IDEA. Further, Plaintiff has not raised this argument.

[41] Docket No. 68, at 21.

[42] *See also Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted) (stating that the purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests"); *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1161 (10th Cir. 2007) ("[A] failure to satisfy Rule 8 can supply a basis for dismissal.").

clear exactly *who* is alleged to have done *what* to *whom*," and otherwise failing to give the Defendants "fair notice as to the basis of the claims against him or her."[43]

To the extent that Plaintiffs' Response suggests that they named Linford for purposes of obtaining prospective relief under *Ex parte Young*, such is not stated in the Complaint. Further, Plaintiffs have not pleaded that Linford has some connection with the enforcement of the challenged statute. Further still, as discussed above, they fail to establish standing to do so.

Accordingly, each of Plaintiffs' claims against Linford fail under Rule 8 and 12(b)(6) and the Court will dismiss them.

*d. Section 1983 against DSD and DSDBE*[44]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[45] Plaintiffs' first cause of action alleges deprivation of due process, equal protection, and violations of the IDEA and § 504; and the ninth cause of action alleges retaliation against the exercise of protected rights.

Defendants argue that dismissal is warranted because § 1983 cannot be used to enforce rights under the IDEA, § 504, or the ADA because those statutes already have comprehensive enforcement schemes. They also argue that Plaintiffs fail to allege a violation of an official policy or custom and deprivation of a constitutional right.

---

[43] *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

[44] DSD and DSDBE are referred to as "District Defendants" hereinafter.

[45] *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Tenth Circuit holds "that § 1983 may not be used to remedy IDEA violations."[46] While the Tenth Circuit has not spoken regarding § 504 and the ADA, this Court has previously concluded, based on persuasive authority from sister circuit and district courts, that "[t]he ADA and Rehabilitation Act have comprehensive enforcement schemes that preclude § 1983 claims based solely on violations of those laws."[47] Notwithstanding that preclusion, some courts hold that the ADA does not preclude parallel constitutional claims.[48] Here, Plaintiffs argue they do not rely on the IDEA, § 504, or the ADA violations as the sole basis for their § 1983 claim, but that the Complaint also alleges Defendants deprived M.M. of his procedural and substantive due process rights and right to equal protection under the law.

The Court need not decide whether the comprehensive enforcement schemes of the IDEA, § 504, and the ADA preclude § 1983 claims for parallel constitutional violations because, even assuming that such claims are not precluded, Plaintiffs fail to plausibly plead a deprivation of substantive or procedural due process, or equal protection.

i. Equal Protection

The Fourteenth Amendment's equal protection clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."[49] The Complaint alleges generally that M.M. was treated differently than similarly situated students without

---

[46] *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denv., Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000).

[47] *Turner v. Alpine Sch. Dist.*, No. 2:19-CV-00870-TS-DAO, 2020 WL 5659386, at *2 (D. Utah Sept. 23, 2020); *see Watkins v. Jordan Sch. Dist.*, No. 2:19-CV-00407-PMW, 2020 WL 2617928, at *4 (D. Utah May 22, 2020) (collecting cases).

[48] *See e.g., Bullington v. Bedford Cnty., Tenn.*, 905 F.3d 467, 478 (6th Cir. 2018); *Rainwater v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, No. CIV-19-382-R, 2020 WL 499698, at *3 (W.D. Okla. Jan. 30, 2020).

[49] U.S. Const. amend. XIV, § 1.

disabilities when Defendants removed him from school based on thoughts and speech related directly to his disability; failed to apply discipline policies uniformly; and irrationally targeted him based on assumptions, stereotypes, and misinterpretations of disability-related behavior.

"[C]laims of disability discrimination trigger rational-basis review."[50] "Under rational-basis review, the underlying decision is presumed valid."[51] To withstand equal protection review, the challenged conduct must be "rationally related to a legitimate governmental purpose."[52] Accordingly, to state a claim of a violation of equal protection rights on the basis of disability, Plaintiffs must plausibly allege that Defendants' action were "arbitrary[,] irrational[,]" or based on a "bare desire to harm" M.M. based on his disability. [53]

Plaintiffs' allegations are conclusory and fail to plausibly state a deprivation of equal protection rights. Plaintiffs do not allege any facts to support that M.M.'s suspension was not rationally related to a legitimate state interest. Nor do they provide any factual allegations supporting their conclusory claims that Defendants acted with "irrational prejudice," that other non-disabled students received more favorable treatment, or that Defendants failed to apply district policies in a uniform manner. Plaintiffs' Response does not point to any allegations in the Complaint that convince the Court otherwise.

ii. Substantive Due Process

The Fourteenth Amendment's due process clause guarantees no state shall "deprive any person of life, liberty, or property without due process of law."[54] This protection includes both

---

[50] *Marks v. Colo. Dep't of Corr.*, 976 F.3d 1087, 1098 (10th Cir. 2020) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)).

[51] *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)).

[52] *Cleburne*, 473 U.S. at 446.

[53] *Id.* at 446–47 (internal quotation marks and citation omitted).

[54] U.S. Const. amend. XIV, § 1.

procedural and substantive due process rights. In the context of public schools, "[t]he due process clause . . . prohibits 'executive abuse of power . . . which shocks the conscience.'"[55] This standard applies "to all school discipline cases."[56]

> [T]he substantive due process inquiry in school . . . punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.[57]

The Complaint alleges that M.M.'s "substantive due process rights were violated when he was removed from school after candidly expressing intrusive thoughts in a private counseling setting" and that "[t]his conduct shocks the conscience and constitutes arbitrary, punitive state action."[58] The intrusive thoughts shared by M.M. included a statement that it was hard to control thoughts of wanting to hurt other people and, when probed by the school counselor, that he would do it by "knife or gun, I don't care."[59] Notwithstanding M.M.'s known disabilities and clarification that he had no intent or plan to act on these thoughts, Plaintiffs' allegations regarding District Defendants' removal of M.M. from school in response to his statements is not arbitrary and does not shock the conscience. Further, Plaintiffs provide no suggestion that M.M.'s removal was based on "malice or sadism." Accordingly, the Court finds that Plaintiffs have failed to plausibly allege a deprivation of M.M.'s substantive due process rights.

---

[55] *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 786 (10th Cir. 2013) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[56] *Id*. at 787.

[57] *Id*. 786–87 (quoting *Cnty. of Sacramento*, 523 U.S. at 846).

[58] Docket No. 35 ¶¶ 252, 272.

[59] *Id*. ¶ 62.

iii. Procedural Due Process

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."[60] It is well-established that a student has property interest in public education.[61]

Plaintiffs primarily allege that M.M.'s interest in public education was deprived without adequate process because no Manifestation Determination Review ("MDR") was conducted; and that the IDEA Due Process hearing remains incomplete because USBE has not released the alleged final version, leaving M.M. without a remedy. USBE's alleged interference in the Hearing Officer's decision is seemingly not attributable to District Defendants, nor have Plaintiffs argued such. Thus, the Court will not consider these allegations for purposes of determining § 1983 liability against the District Defendants.

Regarding failure to provide the procedure required by the IDEA, "it is well established that an entitlement to nothing but procedure cannot be the basis for a property interest."[62] Thus, "a general claim that school officials did not adhere to IDEA procedural safeguards does not amount to a procedural due process claim."[63] Put differently, because the procedural protections

---

[60] *Moore v. Bd. of Cnty. Comm'rs of Cnty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

[61] *Goss v. Lopez*, 419 U.S. 565, 574 (1975).

[62] *Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) (internal quotation marks and citation omitted); *see also Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 746 n.4 (10th Cir. 1991) ("A failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause.") (internal quotation marks and citation omitted).

[63] *Jump v. Springer Mun. Schs.*, No. CV 13-289 KG/KK, 2015 WL 13651163, at *4 (D.N.M. Oct. 14, 2015) (citing *Doe v. Bd. of Educ. of Elyria City Sch.*, 149 F.3d 1182, 1998 WL 344061, at *5 (6th Cir. 1998) ("Appellant does not allege that the state process as a whole was

afforded by due process are not always coterminous with protections afforded by statue,"[a] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause."[64]

The Due Process Clause protects a "student's interest . . . to avoid unfair or mistaken exclusion from the educational process,"[65] which "entitles students in the public schools to be accorded the rudimentary elements of a hearing before they are expelled or suspended for a lengthy or indefinite period."[66] Plaintiffs allege that M.M. was suspended for more than 10 days. To the extent Plaintiffs argue that M.M. was deprived of the process required for such a suspension, which was not plainly asserted in the Complaint, the Court disagrees.

> There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.[67]

The Complaint alleges M.M.'s teacher asked the school counselor to talk to M.M about his behavior. In that discussion with the school counselor, M.M. disclosed his homicidal ideation. At the same time, M.M. attempted to clarify his disclosure, stating that he had no intention or

---

inadequate; he just argues that he was entitled to the opportunity to be heard under the IDEA. This generalized claim of deprivation is insufficient to sustain a procedural due process claim, particularly since the IDEA allows states to implement their own procedural requirements in accordance with federal law.")).

[64] *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986).

[65] *Goss*, 419 U.S. at 579.

[66] *Hatch v. Goerke*, 502 F.2d 1189, 1194 (10th Cir. 1974); *see also Goss*, 419 U.S. at 579 ("At, the very minimum . . . students . . . must be given some kind of notice and afforded some kind of hearing.").

[67] *Goss*, 419 U.S. at 582.

plan to act on his thoughts. M.M. also explained he understood the consequences if he were to do something harmful to other people. The Court finds that this meeting satisfied the required "informal give-and-take" and provided M.M. "the opportunity to characterize his conduct and put in what he deems the proper context."[68]

Additionally, "[e]vents calling for discipline are frequent occurrences and sometimes require immediate, effective action."[69] Thus, even if adequate process was not afforded to M.M. through his conversation with the school counselor, it was provided a few days later when the safe schools committee conducted an investigation into the matter, including a visit with M.M. and his parents to confirm that the student did not have access to weapons, among other things. Further, to the extent Plaintiffs base this claim on M.M.'s transfer to Renaissance Academy, Plaintiffs have not sufficiently alleged that such a transfer constitutes a due process violation.[70]

Accordingly, the Court finds that the Complaint fails to state a plausible claim for deprivation of a constitutional right and will dismiss Claims 1 and 9 (insofar as they seek liability under § 1983).

*e. IDEA Claim*

Plaintiffs allege that Defendants violated the IDEA by depriving M.M. of a FAPE based on: M.M.'s suspension and placement at the Renaissance Academy without following procedure required thereunder; and USBE's alleged refusal to accept the Hearing Officer's correct draft.[71] A party alleging violations of the IDEA must first exhaust their administrative remedies thereunder.

---

[68] *Id*. at 584.

[69] *Id*. at 580.

[70] *See Doe v. Bagan*, 41 F.3d 571, 576 (10th Cir. 1994) (concluding that the "right to public education" does not "encompass[] a right to choose one's particular school").

[71] Docket No. 35 ¶¶ 312, 345–47.

Then, a party aggrieved by the findings and decision of a due process hearing has the right to bring a civil action within 30 days of the decision.[72]

Defendants seek dismissal of Plaintiffs' IDEA claim on the grounds that the claim is untimely, and alternatively, that Plaintiffs were not aggrieved by the Hearing Officer's decision. It is undisputed that Plaintiffs filed their appeal outside the required thirty-day window.[73] However, Plaintiffs argue that they have not received a final version that would trigger the time to appeal because the Hearing Officer uploaded an incomplete, previous version of his decision instead of the final order, and USBE suppressed the true final decision. Thus, Plaintiffs contend that "the 30 day statute of limitations of appeal has never started," and that "their right to take civil action [based on the due process hearing] under IDEA is renewed."[74] Alternatively, Plaintiffs argue that their allegations create issues of fact regarding when the statute of limitations was triggered that cannot be resolved at this stage.

The Court is not persuaded by Plaintiffs' arguments and concludes that the statute of limitations was triggered by the issuance of the Hearing Officer's decision. Plaintiff's IDEA claim is therefore untimely. Black's Law Dictionary defines "administrative order" as "[a]n order issued by a government agency after an adjudicatory hearing,"[75] and a "final order" as "[a]n order that is dispositive of the entire case."[76] Likewise, Black's law dictionary defines a "judgment" as "[a] court or other tribunal's final determination of the rights and obligations of

---

[72] 34 C.F.R. § 300.516(a); Utah Code Ann. § 53E-7-208(4)(a).

[73] The Hearing Officer's decision and order was issued on August 15, 2023. Docket No. 35 ¶ 224. Plaintiffs filed their first Complaint on April 16, 2025. Docket No. 1.

[74] Docket No. 35 ¶¶ 249–50.

[75] *Order*, Black's Law Dictionary (12th Ed. 2024).

[76] *Final Order*, Black's Law Dictionary (12th Ed. 2024).

the parties in a case" and "any order from which an appeal lies."[77] Thus, even accepting Plaintiffs' allegations as true, the decision issued by the Hearing Officer was still a valid and final decision because it was rendered after an adjudicatory hearing, determined the rights and obligations of the parties, had legal force and effect, and provided the basis for appeal to this Court. Even assuming a hearing officer had another draft that was not released, such does not change the fact that USBE released a final decision, which, according to the Complaint, it declined to amend at the Hearing Officer's request.

Plaintiffs also argue that "Defendants cannot weaponize a statute of limitations defense birthed entirely from their own agency's concealment and suppression of an administrative ruling."[78] "Equitable tolling permits courts to extend statutes of limitations on a case-by-case basis to prevent inequity."[79] "[G]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstances stood in [their] way."[80] Strangely, however, Plaintiffs make no argument regarding equitable tolling; nor do they address why they waited over eight months after learning of the alleged irregularities before filing suit. Further, even if timely, Plaintiffs do not provide any nonconclusory allegations that that they were "aggrieved" by the Hearing Officer's decision that ruled in favor of M.M.

---

[77] *Judgment*, Black's Law Dictionary (12th Ed. 2024).

[78] Docket No. 68, at 17–18.

[79] *Ogden ex rel. Ogden v. Granite Sch. Dist.*, 2:22-CV-00331, 2023 WL 2668905, at *4 (D. Utah Mar. 28, 2023) (collecting cases) (internal quotation marks and citation omitted).

[80] *Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018) (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)) (emphasis omitted).

For those reasons, the Court finds that Plaintiff's IDEA appeal is untimely and will dismiss it as to all Defendants without prejudice. Should Plaintiffs secure a copy of the purported final draft of the Hearing Officer's decision, the Court is willing to revisit this issue.

*f. Claim 5 against DSD and DSDBE*

Plaintiffs' fifth cause of action combines claims under four provisions of the Utah Constitution: Article 1 § 1 (Inherent and Inalienable Rights), Article 1 § 7 (Due Process), Article 1 § 24 (Uniform Operation), and Article 10 § 1 (Open Education). Plaintiffs allege that violations of these provisions have caused "severe emotional, academic, and psychological trauma" and seek monetary damages as a result.[81] Defendants argue that dismissal is warranted because Plaintiffs fail to state a plausible claim for monetary damages under the *Spackman* framework.[82]

In *Spackman*, the Supreme Court held, "[t]o ensure that actions [for constitutional violations] are permitted only under appropriate circumstances . . . a plaintiff must establish the following three elements before he or she may proceed with a private suit for damages."[83] "First, a plaintiff must establish that he or she suffered a 'flagrant' violation of his or her constitutional rights."[84] "In essence, this means that a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have known.'"[85] "Second, a plaintiff must establish that existing remedies do not redress his or her injuries."[86] "Third a plaintiff must

[81] Docket No. 68, at 23; Docket No. 35 ¶ 452.

[82] *See Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶¶ 23–26, 16 P.3d 533.

[83] *Id.* ¶ 22.

[84] *Id.* ¶ 23 (citation omitted).

[85] *Id.* (internal quotation marks and citation omitted).

[86] *Id.* ¶ 24.

establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries."[87]

Plaintiffs allege that Defendants flagrantly violated M.M.'s rights under the Utah Constitution when Defendants interfered with the IDEA hearing system; failed to provide notice, a hearing and other process required under law; failed to apply other procedural requirements in a fair manner; and and deprived M.M. of a FAPE.[88]

Even if a flagrant violation exists, the claim fails because Plaintiffs do not allege sufficient facts to "establish that existing remedies do not redress [their] injuries."[89] Defendants argue that existing legal remedies redress M.M.'s injuries, including § 1983, the IDEA, the ADA, and § 504. Plaintiffs argue that they "cannot be expected to rely on statutory administrative remedies the Defendants actively obstruct and manipulate."[90] This conclusory and unsupported argument is insufficient to state a claim under *Spackman*. Plaintiffs have not alleged that federal causes of action separate and distinct from the complained-of state administrative remedy are inadequate to redress the alleged damages. Therefore, the Court will grant dismissal as to the Utah Constitution claims.[91]

*g. State Tort Claims against DSD and DSDBE*

Plaintiffs allege various state tort claims against DSD and DSDBE. Plaintiffs' sixth cause of action alleges deliberate indifference to known conditions and regulatory requirements; the

---

[87] *Id.* ¶ 25.

[88] Docket No. 35 ¶¶ 428–31.

[89] *Spackman*, 2000 UT 87, ¶ 24.

[90] Docket No. 68, at 22–23.

[91] *See Hoggan v. Wasatch Cnty.*, No. 2:10CV01204-DS, 2011 WL 3240510, at *2 (D. Utah July 28, 2011) (dismissing the plaintiff's state constitutional claims because the plaintiff "has not established that existing remedies do not redress her injuries").

seventh alleges IIED; the eighth alleges NIED; and the tenth alleges fraud and intentional misrepresentation. Defendants argue that these claims should be dismissed because the notice of claim required under the Utah Governmental Immunity Act (the "Immunity Act") is deficient as to the District Defendants because the tort claims are not within the scope of facts and claims asserted. Alternatively, the District Defendants argue they have immunity thereunder.

"Compliance with the Immunity Act is necessary to confer subject matter jurisdiction upon a trial court to hear claims against governmental entities."[92] Relevant here, the Immunity Act provides that "[t]he notice of claim shall set forth: (i) a brief statement of the facts; (ii) the nature of the claim asserted; (iii) [and] the damages incurred by the claimant so far as the damages are known."[93] "[A] plaintiff need not specifically mention each potential cause of action in the 'nature of claim' section" "as long as the legal theories underlying a plaintiff's subsequently pleaded causes of action are within the scope of the facts in the notice of claim such that it would have been reasonably clear to the governmental entity that the causes of action could potentially be pleaded."[94]

There are two notices on record before the Court: the original notice of claim filed by Plaintiffs' previous counsel (the "First Notice"),[95] and a supplemental notice attached to Plaintiffs' Response[96] that was more recently filed by Plaintiffs' current counsel. The Complaint is silent regarding the supplemental notice, and Plaintiffs' arguments only address the First

---

[92] *Greene v. Utah Transit Auth.*, 2001 UT 109, ¶ 16, 37 P.3d 1156.

[93] Utah Code Ann. § 63-G-7-401(4)(a).

[94] *Doyle v. Lehi City*, 2012 UT App 342, ¶ 42, 291 P.3d 853.

[95] Docket No. 60-3.

[96] Docket No. 68-1.

Notice.[97] Accordingly, the Court will limit its determination of compliance with the Immunity Act to the First Notice.

The First Notice alleges that District Defendants have "failed to perform or complete" one or more of the Hearing Officer's orders and that "the District's conduct manifests a knowing and reckless indifference toward, and a disregard of, the rights of [M.M.]."[98] The statement of facts discusses the actions the Hearing Officer's order required Defendants to take and failed to do, as well as failure to provide other compensatory education. The Notice also references other claims that Plaintiffs would bring "stemming from" the IDEA and § 504.[99]

Plaintiffs argue that the facts provided in the Notice encompass the tort theories, and that the "knowing and reckless indifference" language with the factual history of the administrative dispute provided fair warning that Plaintiffs intended to pursue tort claims "based on those exact facts."[100] The Court disagrees. The facts provided therein only discuss the alleged failure to comply with the order and to provide compensatory education. Those facts, together with the allegations regarding IDEA and § 504 did not provide District Defendants with fair notice such that it was "reasonably clear" that tort claims would be pleaded.[101] At most, the Notice could be construed to suggest claims for failing to comply with the Hearing Officer's order, "breach of duty," and possible violations of the ADA or § 504.

---

[97] *See* Docket No. 68, at 24–25 (discussing and citing to the "first Notice of claim").

[98] Docket No. 60-3, at 2–3.

[99] *Id*. at 3.

[100] Docket No. 68, at 24–25.

[101] *Heideman v. Washington City*, 2007 UT App 11, ¶ 14, 155 P.3d 900 (determining that "the trial court was correct in concluding that it lacked jurisdiction" over the plaintiffs' claim where the plaintiffs' "failed to indicate that they intended to pursue an intentional interference with economic relations claim").

Plaintiffs also argue that the factual scope of the Notice to the District cannot be resolved at this stage. "[J]udges may resolve factual disputes in the course of determining whether subject matter jurisdiction is proper," unless "the factual disputes are intertwined with the merits."[102] Here, the question of whether the Notice includes sufficient facts to put Defendants on fair notice of Plaintiffs' intent to pursue tort claims is not dependent on nor related to whether the District Defendants' conduct was tortious. Therefore, the Court may resolve the factual dispute for purposes of deciding whether jurisdiction has been established.

Because Plaintiffs failed to comply with the Immunity Act with respect to their tort claims against the District Defendants, the Court lacks jurisdiction to consider them.

*h. Utah Code § 53G-8-202 (Utah Safe Schools Act) and Regulations*

Plaintiffs allege violations of Utah Code § 53G-8-202 and Utah Administrative Code R277-609. The parties agree that neither contains an express private cause of action. The Utah Supreme Court holds that "[i]n the absence of language expressly granting a private right of action in the statute itself, the courts of this state are reluctant to imply a private right of action based on state law."[103] "In fact, Utah courts have rarely, if ever, found a statute to grant an implied right of action."[104] Considering this guidance from the Utah Supreme Court, and without a compelling argument from Plaintiffs supporting that such is appropriate here, the Court will not find that an implied right of action has been created by § 53G-8-202 and will dismiss the Claim.

---

[102] *Perttu v. Richards*, 605 U.S. 460, 472 (2025).

[103] *Bleazard v. City of Erda*, 2024 UT 17, ¶ 47, 552 P.3d 183 (quoting *Miller v. Weaver*, 2003 UT 12, ¶ 20, 66 P.3d 592).

[104] *Id*. (quoting *Buckner v. Kennard*, 2004 UT 78, ¶ 43, 99 P.3d 842).

*i. Amendment*

In their Response to the Motion to Dismiss, Plaintiffs include a one-sentence request that they be granted leave to amend if the Court finds the Complaint deficient.

Federal Rule of Civil Procedure 15(a)(2) provides that district courts "should freely give leave [to amend] when justice so requires." "But this liberal policy is not without limits."[105] Rule 7(b)(1) of the Federal Rules of Civil Procedure requires a request for relief to be "made by motion," "state with particularity the grounds for seeking the order," and "specify the relief sought," among other things. Recognizing the importance of Rule 7, the Tenth Circuit holds that "normally[,] a court need not grant leave to amend when a party fails to file a formal motion."[106] Indeed, a request to amend is appropriately denied where such request is made "in a single sentence" in response to a motion to dismiss, thereby failing to "notify the court and opposing counsel of the grounds for amendment."[107]

Such is the case here. Plaintiffs' request to amend fails to provide any substantive argument in support of amendment and, significantly, fails to specify any factual allegations it could assert to correct the deficiencies. Therefore, the Court will deny amendment at this time.

## III. CONCLUSION

It is therefore

ORDERED that Defendants' Partial Motion to Dismiss (Docket No. 60) is GRANTED.

---

[105] *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014).

[106] *Id.* (quoting *Calderon v. Kan. Dept. of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir.1999)).

[107] *Id.*

DATED September 30, 2026.

BY THE COURT:

District Court Judge
Ted Stewart